Belt v. Raguet.

Reversed and remanded.

HELEN BELT, CLAIMANT, AND H. W. BENDY AND OTHERS, INTERVENORS, v. HENRY RAGUET, PLAINTIFF IN EXECUTION.

It is an elementary principle that the fraud of a grantor taints his conveyance, except as to purchasers for a valuable consideration.

The mere acceptance, without a valuable consideration, of a fraudulent conveyance, is evidence of a participation by the grantee in the fraud of the grantor; and when the fraudulent purpose of the grantor is shown, those who claim under the conveyance can only rebut the presumption of their participation in the fraud, and escape its effects, by actual or presumptive evidence that they are purchasers for a valuable consideration.

A person who was largely indebted executed on the 22d of March, 1847, a conveyance for an ostensible money consideration of all or the greater part of his property, consisting of his headright league of land, to his father-in-law, which conveyance was recorded soon thereafter. On the same 22d of March, the grantee executed a deed of gift of the same property to his daughter, the wife of his grantor; but this deed was not recorded until the 5th of May, 1858. Held, that the two conveyances were to be construed together as parts of a single transaction, which of itself manifested the fraudulent intent of the grantor to secure his property against his creditors; and that evidence of the pecuniary circumstances of the parties, and of contemporaneous conveyances between them of other property, was admissible for the purpose of showing the fraudulent purposes of the parties in the execution of the deeds of March, 1847.

*Held,* further, that under the foregoing circumstances, and there being no visible change of possession under the fraudulent deeds, the statute of limitations of ten years could not avail the wife of the debtor upon her claim to negroes purchased in her name with proceeds of the land, which had been levied on by an execution emanating from a judgment rendered against the debtor in October, 1847, for a long pre-existing debt.

. The case of Reynolds v. Lansford (16 Tex. R., 291,) referred to, and the doctrine there enunciated that a married woman may, under a fraudulent conveyance from her husband, duly recorded for the time prescribed by the statute, acquire a title by limitation against his creditors, pronounced to be an *obiter dictum;* though the correctness of the doctrine is neither affirmed nor denied.

Property acquired by purchase during a marriage is presumed as to strangers to be community property, notwithstanding the title is taken in the name of the wife ; and the presumption is not rebutted by the recording of the conveyance.

A fraudulent conveyance being declared by the statute to be void as against the creditors of the fraudulent grantor, it follows as a necessary consequence that no length of possession by the debtor himself can have any effect upon the rights of the creditor, so long as his debt remains unsatisfied and he has not lost his remedy by laches ; and as a fraudulent vendee acquires no title as against the creditor, he can bar a recovery by the creditor only by means of such adverse possession as will give him title.

When contradictory charges are given upon a matter material to the issue, and especially when there is a controversy about the facts, and the jury may have been misled, a new trial will be granted.

Though the party having the burden of proof is entitled to the opening and conclusion of the argument to the jury, yet an error of practice on a question of this kind, when it is apparent that no injury has resulted to the appellant, affords no sufficient ground for a reversal of the judgment. It might be otherwise in a case of contested facts, wherein the opening and conclusion might be matter of substantial right.

A mere lien upon property taken in execution, without a right to its possession or control, and without a showing that the lien will be impaired by a sale of the property under the execution, furnishes no ground for the interposition of a claim for the trial of the right of property. It seems that the holder of a lien, if endangered by the levy, should invoke the equitable powers of the court by an original proceeding.

On a trial of the right of property taken in execution, if third persons claiming prior liens on the property be permitted to intervene at all, they should be allowed to do so only upon making oath or giving bond as required for trials of the right of property, or for an injunction against the execution. An intervention of such a character, without oath or bond, should be dismissed by the court below on motion ; and if a motion for *its*

dismissal be overruled there, and judgment be improperly rendered for the intervenors, the error, if reserved and assigned, will be corrected in this court by a reversal of the judgment and a dismissal of the intervention.

APPEAL from Tyler.   Tried below before the Hon. J. M. Maxcy.

This was a proceeding for the trial of the right of property to certain negroes, instituted under the statute.

On the 12th day of October, 1847, Henry Raguet obtained a judgment of the District Court of Tyler county, against one Samuel T. Belt, for $1,248, together with interest and cost.   This judgment became dormant by a failure to have an execution issued, and it remained dormant until the 28th of October, 1857, when it was revived.   On the 29th of December, 1857, an execution was issued on this judgment which, on the 19th of January, 1858, was levied on three certain negroes pointed out by Raguet, and found in the possession of Samuel T. Belt and Helen Belt, his wife.   Helen Belt claimed the negroes so levied on, as her separate property, and filed her oath and bond under the statute.   The claim was made and the oath and bond filed on the 25th of January, 1858.

On the 23d of April, 1858, Bendy, McDaniel and Hyde filed an intervention, in which they allege that on the 14th of January, 1858, Belt and wife being indebted to them in the sum of $457, by note, to secure the payment of the same, executed and delivered their deed of trust upon the negroes levied on and in controversy in these proceedings.   They pray that said amount of indebtedness be first satisfied out of said negroes, before the Raguet debt or any part of the same.

On the same day Henry W. Bendy also filed his intervention, alleging that on the 28th of October, 1858, he recovered a judgment in the District Court of Tyler county against S. T. Belt and Helen Belt, his wife, for $751 66, and interest and cost, together with a decree of said court foreclosing a mortgage upon the negroes in controversy, and ordering them to be sold to satisfy said judgment.

On the 29th of April, 1858, Helen Belt filed an answer,

setting forth specifically the nature of her claim and title to the negroes in question.

On the 10th of November, 1858, the intervenor, H. W. Bendy, by leave of the court filed an amendment to his original intervention, and on the same day the other intervenors, Bendy, McDaniel and Hyde and Van Vleck also filed an amendment, in which they admit the priority of the claim of H. W. Bendy, and deny that the negroes are subject to the claim of Raguet.

On the 15th of November, 1858, Helen Belt by leave of the court filed an amendment to her original answer, in which she more fully states her claim and deraigns her title to the negroes, alleging that on the 22d day of March, 1847, one Owen Taylor, her father, made, executed and delivered to her a deed of gift to a certain tract of land; that said land thereby became her separate property; that on the ——— day of ———, 185—, she sold said tract of land to one Sims, and with the money received upon said sale she purchased from H. W. Bendy the negroes in question.

On the 15th of November, 1858, Henry Raguet filed a general denial of all the allegations in the answers of Helen Belt, and of the intervenors. On the same day Raguet filed a motion to quash the affidavit and bond filed in the cause: 1st. Because the affidavit does not swear that said claim is made in "good faith." 2d. Because the affidavit is signed by Helen Belt, by her husband, S. T. Belt, and the affidavit states that Samuel T. Belt made the oath. 3d. Because the bond is not signed by S. T. Belt, he purporting to be one of the principals. The same motion also prays to dismiss or refuse to entertain the pleas of intervention filed: 1st. Because no affidavits have been filed and no bonds given by said intervenors. 2d. Because the intervention of said H. W. Bendy shows that the judgment mentioned has become dormant, no execution having been issued within twelve months from its rendition.

On the 2d of May, 1859, the claimant, Helen Belt, by leave of the court, amended her original affidavit by substituting another one.

On the 1st of November, 1859, Raguet by leave of the court

filed an amendment to his former pleadings, in which he alleges that the deed of gift of the land from Owen Taylor to Helen Belt, on the 22d of March, 1847, was fraudulent and made with the intent and purpose of delaying, hindering and defrauding Raguet and other creditors of Samuel T. Belt; which frauds Raguet alleges to have been concealed by said Owen Taylor, Helen Belt and Samuel T. Belt, until the levy of the execution. He alleges that S. T. Belt has been largely indebted to him since the 1st day of November, 1842, at which time said Belt executed to him his notes; that on the 25th of January, 1847, he sued Belt on the notes, and that service was had upon Belt on the 1st of March, 1847; that on the 22d of March, 1847, Belt made a transfer to Owen Taylor, his wife's father, of property amounting in value to about $10,000, (naming the property;) that Owen Taylor paid no consideration for said property, and that it never went into his possession; that on the same day said Owen Taylor, by deed of gift, conveyed to said Helen Belt the same property so conveyed to him by said S. T. Belt; that on the 12th of October, 1847, he obtained judgment against S. T. Belt for the sum of $1323 88; that said judgment became dormant and was revived by *scire facias* on the 28th of October, 1857; that he had no notice of any claim by Helen Belt to the negroes until the 21st day of October, 1856, when she recorded her bill of sale to the negroes from H. W. Bendy.

At the Fall Term, 1859, the cause came to trial, when the motion of Raguet, the plaintiff in execution, to dismiss the interventions was overruled by the court, and he excepted; whereupon the case went to the jury. The court ruled that the burden of proof was upon the claimant, but that plaintiff in execution had the opening and conclusion to the jury; and the claimant excepted.

The plaintiff in execution put in evidence the record of his judgment against Samuel T. Belt, rendered by the Tyler District Court, at its Fall Term, 1847, and the judgment of revival upon *scire facias* at the Fall Term, 1857; the issuance of execution on December 29th, 1857, and its levy on the 17th of January, 1858, upon the three negroes in controversy, which were found in the possession of S. T. Belt, the defendant in execution, and his

wife, the claimant, and which were valued by the sheriff at two thousand dollars.   Here the plaintiff rested.

The claimant introduced a deed of gift executed to her on the 22d of March, 1847, by her father, Owen Taylor, conveying 1369 acres of the headright league of Samuel T. Belt.   This deed was not recorded until the 5th of May, 1858.   The claimant then introduced a bill of sale for the slaves levied on, executed to her by H. W. Bendy, and recorded in the county clerk's office on the 21st of October, 1856.   By her son, John T. Belt, she proved that about seven years previous she sold land to one Sims for twelve hundred dollars; that the land was shown to Sims by S. T. Belt, who also counted the money and handed it to the claimant; that the land sold to Sims was part of the land given to the claimant by her father, Owen Taylor, and part of the same tract on which S. T. Belt and family still resided ; that the witness' mother, the claimant, always claimed the land; that S. T. Belt and his wife, the claimant, took the money to Woodville to buy negroes, and in a few days S. T. Belt brought home the negroes now in controversy, which, as witness understood from the family talk, were purchased from H. W. Bendy.   Witness never knew of his father, S. T. Belt, having much money, and thinks he had but little.

The claimant introduced the testimony of other witnesses, with regard to the sale to Sims, and the circumstances of S. T. Belt in 1847; but in view of the opinion it is not important to recapitulate it.

"Henry W. Bendy, intervenor in his own right, proved by a decree of Tyler District Court, rendered at the Fall Term, 1856, his vendor's lien upon said negroes, for the sum of $751 66, being the unpaid balance due for said negroes sold to said Helen.

"Bendy, McDaniel & Hyde, to sustain their claim, introduced a note executed by the said Helen and her husband, S. T. Belt, dated on the 14th day of January, 1858, for $450, and secured by deed of trust on the negroes, executed by the said Belt and wife, G. W. VanVleck, trustee, dated on the 14th day of January, 1858, said note being due 1st day of February, 1858."

The plaintiff in execution then, in rebuttal, proved by Van

Vleck, the trustee, that he had never had the negroes in possession, did not know them, and would not know them if he saw them.   He also put in evidence the following conveyances and transfers: Deed of John Allen and wife to Helen Belt, the claimant, dated December 21, 1855, for half league of land in Tyler county; agreement between said Allen and wife and S. T. Belt, dated August 2d, 1841, by which Allen and wife bound themselves to convey to S. T. Belt one-half of Lurany Allen's (formerly Lurany Lewis') headright league, together with S. T. Belt's transfer of the same to Owen Taylor by deed dated March 22, 1847; deed of S. T. Belt to Owen Taylor, in consideration of $1200, dated March 22, 1847, for 1754 acres of Belt's headright league, recorded April 12th, 1847; and bill of sale from S. T. Belt to Owen Taylor, in consideration of $500, dated March 22, 1847, for all his stock of cattle, being some fifty head, five horses, and twenty-five head of hogs, recorded April 13th, 1847.

To the first two of the above conveyances the claimant objected for irrelevancy, and on her objection being overruled, she excepted.

The plaintiff proved by a witness that in 1847 Owen Taylor was a man of but small means, and was insolvent.   He also introduced certified extracts from the tax returns of Tyler county in the years 1846 and 1847 to the comptroller of public accounts, showing the property rendered by S. T. Belt and Owen Taylor; to which the claimant objected, but her objection was overruled, and she excepted.   The plaintiff also proved the pecuniary condition of S. T. Belt, in 1847, showing that the property conveyed and transferred by him to Taylor comprised nearly all of his effects.   "It was admitted by claimant's counsel that the land that Belt and wife are now living on was embraced by land conveyed by Belt to Owen Taylor on the 22d of March, 1847, and by Taylor conveyed to Helen Belt by deed of gift dated on the same day, the same being part of S. T. Belt's headright."

There appears to have been no change of possession of any of the property conveyed by Belt to Taylor, except under the sale to Sims at the time he purchased.

The jury "found the issue for plaintiff, subject to H. W. Bendy's

mortgage;" and the court decreed the negroes to be sold by the sheriff as upon execution, and the proceeds to be applied, first, to the liquidation of H. W. Bendy's claim of $751, with interest, and next to the execution of the plaintiff, Raguet.

The claimant, Helen Belt, moved for a new trial because of mis-finding by the jury; error in the charges; error in the ruling that claimant had the burden of proof but according to plaintiff the opening and conclusion; and error in the admission of the evidence excepted to by claimant.

Bendy, McDaniel and Hyde, intervenors, also moved for a new trial. Both motions were overruled, and the claimant and these intervenors appealed, assigning as errors the refusal of a new trial and the matters set up in their motions therefor.

The plaintiff in execution also assigned errors—1st, in the over-ruling his motion to dismiss the interventions for want of oath and bond; and 2d and 3d, for errors in giving and refusing charges.

*Wilson* and *Cleveland*, for the appellant, Helen Belt.

*Hicks & Neyland*, for the appellee.

MOORE, J.—The judgment in this case, as between the original parties, Helen Belt the claimant, and Henry Raguet the plaintiff in execution, is clearly correct. The deed from S. T. Belt, the husband of the claimant, to Owen Taylor her father, and the simultaneous conveyance of the property by him, by deed of gift to the claimant, was *prima facie* a fraudulent device on the part of S. T. Belt, to hinder and delay his creditors. It was not controverted by the claimant, that this was his object and purpose; but it was insisted that the grantee, Taylor, was not shown to have known or to have participated in this intention, and that his title could not, therefore, be questioned by the creditors of his grantor. The principle here invoked evidently has no application to this case. It is an elementary rule that the fraud of the grantor taints the conveyance, except as to purchasers for a valuable consideration. The mere acceptance of the deed without a valuable

consideration for its support, is evidence of a participation in the fraudulent intent of the grantor. And when the fraudulent purpose of the grantor is shown, those who claim under the conveyance can only rebut the presumption of their participation in the fraud, and escape its effects, by actual or presumptive evidence that they are purchasers for a valuable consideration. (1 American Lead. Ca., 83.) The conveyance from Belt, who it is shown was largely indebted, to Taylor, and deed of gift from the latter to Mrs. Belt having been executed simultaneously, are to be viewed as a single transaction, which of itself manifests the fraudulent intent of the grantor to secure his property against his creditors. There was no effort, in the court below, to repel this presumption. On the contrary, if there were any doubt about it, the testimony is ample to establish the fact, that the whole arrangement was for the purpose of securing the property against Belt's creditors; that Taylor paid no consideration whatever for it, and was unable to have purchased the property conveyed to him at a reasonable or fair price. And for the purpose of showing this, and the object and purpose of the parties in executing the conveyances, the court properly admitted the evidence touching the pecuniary ability of the parties, and the cotemporaneous conveyances between them respecting other property claimed by Belt. (Green v. Banks, 24 Tex., 508.)

In the case of Reynolds v. Lansford, (16 Tex., 291,) it is said, that the wife, under a fraudulent conveyance from her husband, acquired a title by limitation against his creditors; but to do so, it is said, the title under which she claims must have been duly recorded for the time prescribed by the statute. As, however, the facts then before the court were not sufficient to give title to the wife by limitation under the rule recognized by the opinion in that case, we take occasion to say (without at present denying its correctness) that we do not feel ourselves bound by this doctrine, although sanctioned and supported by the high authority upon which it rests. But even if we concede the principle enunciated in this case to be correct, Mrs. Belt has failed to bring herself within its protection, and the case may be justly cited as an authority against her claim. The negroes upon which Raguet's

execution was levied, were presumptively community property; and even the record of the bill of sale to her does not contradict or militate against this conclusion. But, if it did, the bill of sale had not been recorded two years before the levy of the execution. It is insisted, however, that the presumption of community interest in the negroes arising from the purchase during coverture, is repelled by proof that they were paid for with money received from land belonging to the separate estate of Mrs. Belt. And although, as we have seen, the conveyances under which Mrs. Belt claims the land in question, as her separate property, were fraudulent and void as to Raguet, who was a creditor of Belt at the date of their execution; and although the deed from Taylor to her was not recorded until after the levy of Raguet's execution, it is insisted that, as ten years from the execution of the deeds under which she claims had elapsed previous to the levy of the execution, she had acquired a perfect and indisputable title to the property as against Raguet, by the statute of limitations. This assumption is evidently unsupported by any thing that is found in Reynolds v. Lansford: on the contrary, it is clearly disaffirmed by the decision in that case. The land now claimed as Mrs. Belt's separate property was a part of Belt's headright, and was, therefore, originally either community property or his separate estate. At the time of the conveyance to Taylor, Belt's homestead was upon his headright, and has continued so until the trial of this case; but it does not appear that that part of his headright league conveyed to Taylor included his homestead, and in view of the object of the conveyance, it is hardly to be presumed that it did. And, if not, it does not appear that the land conveyed to Taylor has been in the actual possession of any one, without which, of course, there could be no title by limitation. On the other hand, if the tract conveyed included that part in the actual occupation of Belt and wife as their homestead, it will have to be admitted that there was no apparent or visible change in the nature or character of the subsequent possession; and it certainly cannot be held that such mere continued possession will operate, under a secret fraudulent conveyance from the husband to the wife, to bar and conclude his creditors. A fraudulent conveyance is declared void by the

statute, as to the creditors of the fraudulent grantor. As a necessary consequence, no length of possession by the debtor has any effect upon the rights of the creditor, so long as his debt remains unsatisfied, and his remedy for its collection is not lost by his laches; and as the fraudulent vendee gets no title against the creditor by the conveyance, he can only bar his recovery by such adverse possession as will give him title. When, as between husband and wife, there is no visible change in the control and apparent ownership of property, it seems difficult to perceive by what fiction of law she can divest the title out of the husband by limitation. In this case the fact of her claim was not brought home to the creditor, nor was implied notice given of it by the record of her title, if it would have that effect. Both in law and fact the possession, to whatever extent it was held, was in the husband; and Mrs. Belt has shown neither an inception of title or possession, in aid of which the statute of limitations could be invoked. The charge upon this point, given by the court below at her request, is erroneous and inappropriate to the case, and should have been refused; but it furnishes her no ground of complaint. Neither is the fact that it contradicts the instructions previously given to the jury, a sufficient reason for the reversal of the judgment. When inconsistent or contradictory charges are given upon a matter material to the issue, and especially when there is a controversy about the facts, and the jury may have been misled, a new trial will be granted. (Graham & W. on New Trials, 800.) But there is no room for doubt or controversy as to the facts on this branch of the case. The error of the court was at the instance and in favor of the appellant, and she can not complain of it.

It seems that the party upon whom the burthen of proof rests, should have the opening and conclusion of the argument to the jury. (Latham v. Selkirk, 11 Tex., 314.) But we are of opinion that a mere error of practice on a question of this kind, and from which, it is evident from the record, no injury has resulted to the appellant, affords no sufficient grounds for a reversal of the judgment. In a case of contested facts, when the opening and conclusion of the argument to the jury may be a matter of substantial

31*

right, such an error might and probably would be sufficient to require a reversal of the judgment.

It only remains to dispose of the branch of the case between Raguet the plaintiff below, and the intervenor H. W. Bendy, and Bendy, McDaniel & Hyde, and G. W. Van Vleck. These parties came into the case in the court below, not for the purpose of claiming the property levied upon by the plaintiff, but to assert that they respectively held liens upon it superior to that acquired by the plaintiff. It is evident, if the intervenors held valid and subsisting liens upon the property in dispute, that their rights could not be affected by its condemnation in this suit in satisfaction of Raguet's execution. Even if a sale under the execution to an innocent purchaser would have had this effect, it could have been avoided by giving notice of their lien at the time of sale. And it is therefore manifest, that a mere lien upon the property as a security for a debt, without the right to the possession or control of the property, and when it is not shown that the rights of such a party will in any manner be impaired or endangered by a levy and sale under the plaintiff's execution, furnishes no ground for the interposition of a claim for the *trial of the right of property*. (Wootten v. Wheeler, 22 Tex., 338.) And if a party could, under any circumstances, interpose for the assertion or protection of his lien, it would seem more consonant with principle that he should do so by appeal to the equitable powers of the court, in the exercise of its general jurisdiction, than by a resort to the statutory remedy for the trial of the right of property. But it is evident they should not, by a resort to either remedy, be permitted to impede or stay a plaintiff's execution without the oath and bond required in cases for the trial of the right of property, or to enjoin an execution. The present case furnishes a sufficient illustration of the impropriety of permitting this to be done. As we have seen, the judgment in the court below was properly rendered against the original claimant, Mrs. Belt. It might be reversed, however, as to the intervenors, and the litigation continued indefinitely on their part, without either oath or bond; and thus, although the plaintiff would encounter all the embarrassment and delay in the collection of his execution that would have arisen

from an original interposition of claims by them for the trial of the right of property, if successful in the final result, he might still lose the statutory security, as well as the compensation intended to recompense him for the delay in the enforcement of his execution.. We are of the opinion, therefore, that neither of the intervenors having shown any sufficient reason for their intervention in this case, and not having made oath or given bond as required by the statute in cases for the trial of the right of property, the plaintiff's motion to dismiss their petitions to intervene should have been sustained.

It is therefore ordered by the court, that the judgment in favor of H. W. Bendy, as intervenor against the plaintiff below, Henry Raguet; and, also, the judgment in favor of said Raguet against the intervenors, Bendy, McDaniel & Hyde, and G. W. Van Vleck, be, and each of the same are hereby reversed; and this court proceeding to render such judgment as should have been rendered in the court below, it is ordered, adjudged and considered, that the petitions of said intervenors be respectively dismissed; and that said Raguet have and receive of and from them, all costs occasioned thereby in this court, and in said District Court. There being no error in the judgment in favor of the plaintiff below against Helen Belt, the claimant, it is in all things affirmed.

Judgment rendered.