JOHN C. McDONALD v. THE TEXAS & PACIFIC RAILROAD.

(Case No. 3009.)

1. PRACTICE — OPENING AND CONCLUDING.— Refusing the defendant permission to open and conclude the argument in proceedings by a railroad to condemn right of way through his land is not error for which the case will be reversed, unless it is evident from the record that injustice has resulted therefrom.  27 Tex., 481.

2. RAILROAD — ACTUAL AND CONSEQUENTIAL DAMAGES FOR RIGHT OF WAY.— The rule for assessing damages for right of way for a railroad is the actual value of the land condemned for the use of the road, and such consequential damages as may result from the particular manner in which the road is constructed, or shape in which the land may be taken, against which consequential damages may be set off the increased value of the land remaining, by reason of the building of the road, and if the damage is greater than the benefit, the difference may be recovered by the owner, in addition to the value of the land condemned.  26 Tex., 603.

APPEAL from Lamar.   Tried below before the Hon. John C. Easton.

This suit was instituted by the T. & P. R. R. Co., in the district court of Lamar, against appellant, in accordance with the provisions of article 4922, to revise the decision of commissioners who had assessed the damages on the condemnation of the appellant's land, for the construction over it of appellee's railway.

The petition alleges that the land condemned embraced fourteen and seven thousand one hundred and twenty-nine twenty-one thousand seven hundred and eightieths acres; that the sum of $350 was a full and fair compensation for it, and that they tendered that amount to appellant, but he refused to accept it; that thereupon they filed in the district court of Lamar county their application for the appointment of commissioners; that commissioners were appointed, who assessed the damages of the appellant at $1,100, which appellee alleged was exorbitant, excessive, unjust, and four or five times as much as the just sum.   The prayer is that the facts of the case be inquired into, and such judgment rendered as will be just, and for general relief.   The company

also filed the bond required under article 4992, to abide the decision of the case.

To this petition McDonald demurred.

He filed also the general issue, and pleaded specially:

1. That the award made by the commissioners was not the true amount of damages due him, but as a compromise with a view to quiet controversy.

2. That the company have illegally appropriated his land, entering at the northeast corner of his farm, running their line diagonally across it, cutting his farm into triangles, rendering it almost valueless as a farm.

3. That it has dug through the whole length of it a deep cut and ravine, and thrown out on each side a large embankment of rocks and clay subsoil, which they have scattered and spread over his farm for a great distance on each side. And, in consequence, that the actual damage done to the lands of the defendant by reason of the running of the line as aforesaid through it was $2,000.

5. That he has been vexed, harassed and annoyed in body and in mind by reason of the tortious acts of plaintiff in wrongfully entering upon his land, injuring his farm and overthrowing his plans, to his damage $2,000.

6. That he has been annoyed, harassed and vexed and kept from his business by this suit, and forced to employ counsel and pay witnesses, etc., to his damage the further sum of $1,000.

He pleads these several sums of money in reconvention and prays judgment for his damages.

The plaintiff filed an amended petition denying the allegations of defendant's answer, and alleging that the defendant's land has been greatly enhanced in value by the construction of the road, to the amount of $2,000, which they plead in offset to the defendant's claim for damages beyond the actual value of the land appropriated.

To this amendment defendant excepted on the ground that it attempts to set up advantages by construction of said road against damages sustained by defendant.

The demurrers and special exceptions filed by the de-

fendant were overruled, for the reason, as stated in the bill of exceptions, "that where the defendant claims special damages to his land not taken by the road, then the benefits accruing, if any, may be set off against the damages so claimed."

The case was submitted to a jury, who returned a verdict for the defendant for the land condemned, $200, and for damages $150; and judgment was rendered condemning the right of way over the land (four and one thousand and fifty-four one thousand and eighty-fourths acres in the field of defendant, in all fourteen and seven thousand one hundred and twenty-four twenty-one thousand seven hundred and eightieths acres), and for McDonald for $350, and against him for costs, it appearing that the amount had been tendered him.

The defendant moved for a new trial and in arrest of judgment, which being overruled he appealed.

*Maxey, Lightfoot & Gill*, for appellant.

*Throckmorton & Brown*, for appellee.

QUINAN, J.— There are fifteen errors assigned, but many of them are not noticed in the appellant's brief, and they embrace but a few propositions, which may be considered without specially noticing each assignment.

1. It is insisted that the court erred in permitting the plaintiff's counsel to open and conclude the case before the jury. While it may be conceded that in a particular case, where the defendant had the affirmative of the issues involved, and the case was one of contested facts, to deny the defendant the right of opening and conclusion might be an error sufficient to require the reversal of the judgment, a mere error of practice on a question of this kind, unless it is evident from the record that injustice has resulted, would not afford grounds for reversal. Belt v. Raguet, 27 Tex., 481.

Besides, it is not clear that the burden of proof or the affirmative of the issues was on the defendant. It was a

suit by the railroad company to procure the condemnation of the land and to have the damages assessed. It was necessary for the company to establish that it was authorized to institute this proceeding and to have condemnation of the land, and to prove its plea of tender, and other allegations. The defendant had pleaded the general issue, and that he had pleaded in addition special defenses did not relieve the plaintiff of the necessity of proving its case or deprive it of the right to open and conclude.

It is objected that the court erred in overruling the demurrers and exceptions of defendant to plaintiff's petition; in refusing to sustain defendant's exceptions to testimony offered; in its charge to the jury; in refusing to grant a new trial.

These objections are all pointed at what is alleged to be an erroneous view of the law of the case, in respect to the assessment of damages upon the condemnation of the right of way, by which the judge was governed in his several rulings and charges in the case. It is assumed that he permitted the plaintiff to prove by witnesses the speculative benefits of the construction of the railroad as an offset against the defendant's damages, and that by his charge to the jury he permitted them to offset, in assessing the damages, the speculative and imaginary benefits done to defendant's land by reason of the construction of the railroad through it against the damages he had sustained by the taking of it for the purposes of the road.

But these objections are not sustained in point of fact by the record. We can find in the transcript no ruling of the court from which it could be inferred that speculative or imaginary benefits to the defendant's land were, in his opinion, a proper subject for the consideration of the jury in the assessment of damages. What he did hold on this subject can be best understood from his instruction to the jury. He instructed them:

"The criterion by which you will assess the damages in this case is: 1. What was the actual value of the land taken or condemned for the use of the road? This amount

you must return a verdict for in favor of the defendant against the railroad company.

" 2. Then, if there is any consequential damage claimed by reason of running the road in a particular way across the lands and premises of the defendant, or by throwing the rocks or dirt on his land not taken by the road, you may estimate these damages as the testimony shows you they really are, and if the balance of the tract of land has been increased in value equal to these damages, then you will offset the one against the other; and if the value of the tract of land has not been by the building of the road enhanced as much as it has been damaged by reason of the construction of the road through it, whatever the difference is, you will award to the defendant in addition to the actual value of the land taken, but if they are equal you will only award the actual value of the land."

These charges of the judge do not countenance the idea advanced by appellant's counsel, that in the opinion of the court speculative and imaginary benefits could be set off against the value of the land taken or the damages to other land, caused by the construction of the company's road.

The instructions are believed to be strictly in accordance with the statute and what may be now regarded as the settled law of this state upon the subject.

The rule prescribed in the statute is very brief and general in its terms,—" taking as the rule of assessment the damages so done the real estate and property of said owner by the construction of said railroad and by the condemning of said real estate and property for the use aforesaid."

In B. B., B. & C. R. R. Co. v. Ferris, 26 Tex., 603, the supreme court, Moore, J., delivering the opinion, citing many cases, deduces the following as the correct rules for the assessment of damages, and these rules have been followed ever since in this state. It would be a " very unnecessary labor on our part to review the multiplied and conflicting cases upon the subject in other states, though it is believed that the great current of decisions in other states is as it is held here.

"The owner of land taken for public use is entitled to the intrinsic value of the land so taken, without reference to the profit or advantage he may derive from the construction of the improvement for which it is taken. He is also entitled to such damages, if any, as are occasioned to the remainder of the tract of which the land taken was a part, by reason of its appropriation for the purpose for which it was taken. In estimating these damages the benefits and advantages that the remainder of the tract will derive from the improvement are legitimate subjects of consideration, and are to be estimated in determining the true amount of damages that have accrued to the owner by the appropriation of his property for the purpose for which it has been taken. But this does not affect the claim for the intrinsic value of the land taken."

The charge of the court in this case was doubtless framed upon this opinion and is in substantial accord with it. We can perceive no error in it. "And if it could be objected that there were other aspects of the law appropriate to the facts not embraced in it, it was the duty of the appellant to have presented them to the court and invited its action upon them." Peeler v. Guilkey, 27 Tex., 358.

The only charge asked by defendant was refused, no doubt, because already in effect given in the general charge. It suggested nothing upon the subject of speculative damages. In this view of the law of the case, then, there was no error in overruling the exceptions of the defendant to plaintiff's petition, nor in permitting the witnesses to testify for the plaintiff, "whether (not considering the actual value of the land appropriated as right of way) the tract of land and farm was enhanced in value by the construction of the road in a sum equal to the damages done said land and farm by the building through it of the road." This was a legitimate subject of inquiry, proper for the consideration of the jury. Indeed it is not easy to perceive how they could otherwise estimate the defendant's damage, or whether he was in fact damaged at all; or that the expression "the enhanced value of the land" could be construed

to mean "a speculative or imaginary benefit," or that they misunderstood its application. Nor have we any reason to believe that the verdict rendered was the result of any consideration of prospective or imaginary benefits to accrue to the defendant, but rather that they assessed the damages as they were in effect instructed to do, by estimating the actual enhanced value of the land, and the damage actually done. Bast v. Alford, 20 Tex., 227.

It is assigned for error, and the point is saved by a bill of exceptions, that the court refused to permit defendant to prove "that the cuts or embankments made by the railroad company through or on the lands in controversy had caused any damage to said lands by overrunning the same with water." This testimony was objected to on the ground that the defendant had not specially alleged damage done by water or overflow.

We think the testimony was properly excluded. There was certainly no allegation in the defendant's answer under which it would have been admissible. He had alleged no general damages. He had specially charged the injury done him and laid his damages therefor; that by the construction of the road across his farm it was cut into triangles, and so destroyed its value as a farm; that plaintiff had dug a deep cut through his farm in its whole length, and had thrown out on each side an embankment of rocks and clay subsoil which they had scattered over his land, on each side of the railway; that they had vexed and harassed him with this litigation; but there is nothing in his pleadings to suggest that he had suffered any injury from water or overflow. Whether, under a general allegation of damage, he might be permitted to make this proof, it is not necessary to say; but having set out in his answer with minuteness, his claim, it would seem to be unfair to permit him to go into other matters of which he had given no notice. Nor, indeed, can we say with certainty, from the bill of exceptions, whether the proof offered would have been relevant and material; whether the overrunning with water was merely a casual occurrence which happened during the construction of the road, and

not to happen again, or whether it amounted to a permanent appropriation of the defendant's land, other than that embraced in the right of way.

The motion for a new trial was properly overruled. There was testimony to support the verdict of the jury. Six or seven witnesses testified " that outside of the land actually taken, that the increased value of the defendant's land, by reason of the railroad being made, was equal to the damages; that the clay subsoil and rock had not been thrown beyond the line of the land condemned." There was other testimony, especially that of the defendant, conflicting with this, but it was the business of the jury to weigh it and judge of its credibility. And we cannot undertake to say that this verdict was clearly wrong. Jordan v. Imthurn, 51 Tex., 276.

This disposes of all the questions material for the decision of the case presented in the briefs or assignments of error.

There is no error presented which, in our opinion, would require a reversal of the judgment, and it will therefore be affirmed.

AFFIRMED.