PARLIN & ORENDORFF COMPANY v. R. L.
HARRELL, ASSIGNEE.

No. 1006.

1. **Fraud—Goods Obtained by False Statements.**—If a sale of personal property is obtained by fraud and misrepresentations by the purchaser, the title does not pass as between the parties.

2. **Reservation of Title by Seller—Statute.**—The statute (Sayles' Civil Statutes, article 3190a) declaring reservations of title in goods sold on credit as void "as to creditors and bona fide purchasers, unless such reservations be in writing and registered," was intended to fix the rights of creditors and purchasers in good faith. Such contracts are good as between the parties.

3. **Statute Construed—Lien Creditors.**—The creditor protected by said statute is *a lien contractor*—one who has secured a lien upon the goods to secure his debt by contract or legal process. It does not protect general creditors without lien.

4. **Accepting Creditors Under Trust Deed.**—Until creditors named as beneficiaries in a trust deed shall accept its benefits, they have no lien under such deed, and are not protected by statute against suit for the goods, for nonpayment and fraud.

5. **Assignee in Possession.**—The trustee named in the deed of assignment having possession of the goods, the registration of the deed is immaterial.

6. **Withdrawal of Chattel Mortgage.**—An assignment of personal property was filed in the proper office as required by statute. The withdrawal of it from the office destroys its effect as a recorded instrument.

7. **Election of Remedies.**—A seller of goods reserved title until the price should be paid. The creditor had the right either to reclaim the goods or collect the purchase money. He can not have both. Having elected his remedy, he is bound thereby.

8. **Same.**—A creditor having the right to reclaim the goods on nonpayment of price, having assigned one or more notes given for purchase money, thereby makes his election to collect the price, and can not recover the goods.

ERROR to District Court of Burnet County. Tried below before Hon. W. A. BLACKBURN.

*R. H. Ward* and *Warren W. Moore*, for plaintiff in error.—1. The court erred in finding that no fraud had been practiced on plaintiff by the reports furnished the mercantile agency by Burns & Munn; because (1) the evidence shows that said reports were false, in that they gave Burns & Munn a financial standing they were not entitled to; (2) the evidence shows that plaintiff was a subscriber of said mercantile agency, and that on account of said false reports, plaintiff, believing them true, extended credit to Burns & Munn, and that plaintiff would not have done so had it known that said reports were false. Bank v. Bamberger, Bloom & Co., 77 Texas, 51; Wolf v. Lachman & Jacobi, 20 S. W. Rep., 367.

2. Plaintiff in error having sold the property in controversy to Burns & Munn by contracts of sale wherein it reserved the title in itself until the purchase money was paid, the purchase money never having been paid, the title of plaintiff in error was superior to the rights or title of any one except creditors who had established a lien against the property by process of law, and subsequent purchasers for value without notice.

As to who are creditors under article 3190a: Ayers v. Duprey, 27 Texas, 606; Overstreet v. Manning, 67 Texas, 663.

As to who are bona fide purchasers under same: Ayers v. Duprey, 27 Texas, 606; Spurlock v. Sullivan, 36 Texas, 516; McKamey v. Thorp, 61 Texas, 652.

Upon the proposition generally that Harrell and preferred creditors can not be permitted to hold the property in controversy against the true unrecompensed owner, plaintiff in error: Haggerty v. Palmer, 6 John. Ch., 438; Wolf v. Lachman, 20 S. W. Rep., 867.

*Geo. F. Pendexter* and *G. W. Allen*, for defendant in error.—1. The reservation of title by plaintiff in error to the property in controversy, in the sale to Burns & Munn, simply operated as a mortgage upon said property, and the plaintiff in error's remedy was by suit upon the notes given for the purchase money, and to foreclose the lien upon the property therefor. Rev. Stats., art. 3190a.

2. When the plaintiff in error sought to rescind the sale of the property in controversy to Burns & Munn, on the ground of fraudulent misrepresentations to a commercial agency, it should have made them parties to the suit, and tendered back the notes given by them for the purchase money of said property. Bank v. Thomas & Son, 69 Texas, 237; Coddington v. Wells, 59 Texas, 49; Tom v. Wollhoefer, 61 Texas, 277; Knittel v. Cushing, 57 Texas, 354.

COLLARD, ASSOCIATE JUSTICE.—The statement of the nature and result of this suit made in plaintiff in error's brief, and accepted as correct by defendant in error, is as follows: This was a suit for the possession of personal property. Plaintiff in error, a corporation duly incorporated under the laws of Illinois, and transacting business under a legal permit in Texas, brought this suit against R. L. Harrell, trustee, under a deed of trust from Burns & Munn, conveying to him, without consideration, certain personal property to secure certain preferred creditors named therein, for the possession of certain personal property, to wit, certain wagons, etc. Plaintiff in error claimed title to the property in controversy by virtue of two contracts of sale to Burns & Munn, of date March 13, 1891, and July 27, 1891, wherein plaintiff in error reserved the title to the said property until the purchase money was paid. Said purchase money was never paid. Defendant in error claimed title to the property in controversy by virtue of a deed of trust from Burns & Munn, of date September 30, 1891, whereby they conveyed to the defendant in error, as trustee, the property in controversy for the benefit of certain preferred creditors. After this suit was filed, the trustee sold the goods in controversy to the Moline Plow Company, who filed a claimant's bond and oath; but all these matters were divided, and formed on the docket of the District Court of Burnet County, Texas, two suits—the suit we are now considering, and the suit of Parlin & Orendorff Company v. The Moline Plow Company. These two suits come up by different transcripts, and will be separately considered.

The cause was tried before the court, a jury being waived by both parties, and the court rendered judgment for the defendant; from which said judgment plaintiff prosecutes this cause by writ of error to this court.

The important facts necessary to a decision are as follows: Plaintiff sold the goods levied on to Burns & Munn upon two orders of the latter, which stipulated that the title to all the goods ordered shall be reserved and remain and be vested in the Parlin & Orendorff Company until all the purchase money therefor should be fully paid, whether

said purchase money shall be evidenced by notes or by open or stated accounts. The orders also stipulated, that all proceeds of sales of goods should be held by Burns & Munn in trust for the Parlin & Orendorff Company, subject to their order, so long as the former should owe them any sum of money under the contract. The orders were signed by Burns & Munn and accepted and signed by plaintiff—the first on March 3rd, and the second, July 27, 1891.

Plaintiff claims that the title to the goods had never passed to Burns & Munn under the terms of the contract, because the purchase price had not been paid, and consequently no title passed to Harrell by the trust deed to him. Plaintiff also claimed title to the goods, because they were obtained from them by fraud on the part of Burns & Munn.

Burns & Munn made a report of their financial condition to the Bradstreet Commercial Agency, April 1, 1891 (and to the Dun agency), showing—

| | | |
|---|---:|---:|
| Merchandise on hand valued at | $7,132 | 10 |
| Notes and accounts, $6942.23, valued at | 6,942 | 23 |
| Real estate and live stock, after deducting homestead exemptions, $2300, valued at | 1,600 | 00 |
| | $15,674 | 33 |
| Total assets stated to be | 20,244 | 23 |
| Their liabilities closed by notes stated at | 7,624 | 40 |
| And open accounts | 1,781 | 15 |
| Total liabilities | $9,405 | 55 |

The report also showed that their annual business amounted to $25,-000. It furnished the names of their principal creditors, and gave as additional reference the First National Bank at Burnet. The bank was communicated with as to the solvency of Burns & Munn, and a reply was received that they were good for the amount named, $1200. The goods were shipped and delivered to the purchasers after consulting the above report furnished by the agency, plaintiff relying upon the truth of the report. Plaintiff says that the report was false, and that it was defrauded by the false representations therein, and therefore their title to the goods never passed, and that they ought to recover them from the trustee.

The trustee, Harrell, was holding the goods under a trust deed executed by Burns & Munn on the 30th day of September, 1891, which conveyed the property levied on and all other goods in the business of the firm, and their notes and accounts, which notes and accounts are of the aggregate face value of $7147.47. The deed of trust states, that it was intended to better secure creditors named, and in the order named, to wit: Walter A. Tips, of Austin, in the sum of $310.92, evidenced by note, and $154.17 by account; John A. Webb, in the sum of $61.70, due by account; T. E. Hammond, of Burnet, $200; David Bradley Manufacturing Company, of Chicago, Ill., in the sum of $1694, evidenced by notes; the Moline Plow Company, of Moline, Ill., in the

sum of $707.08, evidenced by note, and $1367.56 by account; the Parlin & Orendorff Company, of Dallas, Texas, in the sum of $3235.91, evidenced by notes; Mitchell Lewis Company, of Racine, Wis., in the sum of $1528.30, evidenced by notes; all the debts aggregating $9259.64. The trustee is authorized to sell the goods for cash and collect the notes and accounts delivered to him, and with the proceeds to pay the creditors in the order named. The deed of trust, duly acknowledged, was deposited with the clerk of the County Court of Burnet County on the day of its execution, and was duly recorded by him on the 2nd day of October; it is marked filed 30th of September, 1891, and entry made of such filing in the chattel mortgage record. The goods were immediately upon the execution of the instrument delivered to the trustee, and he took possession of the same, and has continued to hold the same except when his possession was interfered with by plaintiff's writs of sequestration.

The first writ was issued and levied on the goods on the 2nd day of October, 1891, being a part of the goods sold by the Parlin & Orendorff Company to Burns & Munn. This writ was quashed on October 6th, and on the 7th of October another writ was issued and levied. After the first writ was quashed, and before the second was levied, the trustee, Harrell, sold the goods to the Moline Plow Company, one of the creditors named in the deed of trust, for the sum of $900 in cash, and delivered the same to them. The Moline Plow Company claimed the property by affidavit and bond after the second levy, and the sheriff delivered the goods to them.

The testimony does not show that any of the creditors named in the deed of trust had accepted its terms and benefits before the writs of sequestration were levied, or either of them. Harrell testified, that he had paid the creditors in the order named, down to the Moline Plow Company, whom he yet owed about $700. His testimony was, of course, at the time of the trial, which was on April 6, 1892. The last writ was levied October 7, 1891. Harrell's testimony does not show when he paid the creditors.

It also appears from the testimony, that the notes given for the wagons sued for were three in number, payable in two, four, and six months from date. It appears that after the deed of trust was executed one of them had been sent to a Burnet bank for collection by a bank in Canton, Ill., indorsed in blank by plaintiff. It is not shown that plaintiff regained ownership or possession of the note.

*Opinion.*—The principle invoked by plaintiff, that the title to the goods did not pass to Burns & Munn by the sale, if the sale was obtained by fraud and misrepresentations on the part of Burns & Munn, is correct. Bank v. Bamberger, 77 Texas, 51; Wolf v. Lachman & Jacobi, 20 S. W. Rep., 867. But we can not say, in opposition to the finding of the court below, that the fraud was proved, viz., that the report to the commercial agency of April 1, 1891, was materially false.

The evidence is by no means so satisfactory as to warrant us in finding the fact different from the finding of the trial judge.

Another contention of plaintiff is, that by the terms of the sale to Burns & Munn the title was to remain in plaintiff until the goods were paid for, and as they were not paid for, the title did not pass, and consequently the trustee, Harrell, and the creditors secured can not claim any benefit under the trust deed. The first difficulty in holding with plaintiff on this point is, that the statute declares such reservations of title to chattels as that set up by plaintiff to be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. Sayles' Civ. Stats., art. 3190a. The entire article reads as follows: "All reservations of the title to or property in chattels as security for the purchase money thereof shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages."

We do not think this statute was intended to prevent parties from making a contract in the sale of personal property so that the title should remain in the vendor until the purchase money should be paid, or to prevent them from making a conditional sale of personal property when possession was delivered to the vendee; but it was intended to fix the rights of creditors and purchasers in good faith, in case of failure of the vendor to have his contract registered as a chattel mortgage. Such an instrument is to be treated as a mortgage, in the sense that it must be registered as a chattel mortgage to be valid against purchasers in good faith and creditors. The nature of the contract was not changed by the statute. The parties could contract in reference to the title, and declare who should own and hold it; it was not the purpose of the statute to deprive them of the right to so contract. If the contrary be true, plaintiffs could not maintain this action for the possession of the property. In such case they would be merely mortgagees out of possession, and could become entitled to possession only by foreclosure and sale. Erwin v. Blanks, 60 Texas, 583; Garrity v. Thompson, 64 Texas, 598; Wilber v. Kray, 73 Texas, 537; Belt v. Raguet, 27 Texas, 471; Key v. Brown, 67 Texas, 300.

The rights of creditors and purchasers are affected by registration or failure to register as a chattel mortgage, but the nature of the contract is not changed by the statute. By the contract of sale plaintiff did not surrender the title to the goods, and therefore can sue for possession, but it could not recover against a creditor or bona fide purchaser, as the contract was not registered as a chattel mortgage. We think the creditor referred to means a lien creditor—one who has secured a lien upon the goods to secure his debt by contract or legal process. The statute does not protect general creditors without lien. Sayles' Civ. Stats., arts. 3190a, 3190b; Grace v. Wade, 45 Texas, 527;

Brothers v. Mundell, 60 Texas, 240; Overstreet v. Manning, 67 Texas, 657; Furniture Co. v. Hotel Co., 81 Texas, 135.

The trust deed to Harrell, as affecting the rights of the parties, should be treated as a mortgage in favor of all creditors who are shown to have accepted its term. It follows, that such of the creditors as are shown to have accepted under the trust deed prior to the levy of the last writ of sequestration are entitled to protection upon the ground that they are lien creditors, and their rights can not be defeated by the unregistered reservation of title in the goods reserved in the contract of sale by the plaintiff. The trust deed could not have the effect to protect creditors unless they have accepted it, and not until accepted. An acceptance, to defeat the right of plaintiff, must have been made at least before the levy of the writ of sequestration which took the property under plaintiff's lien. The trustee could not protect the property for the secured creditors against other creditors until the former had accepted under the trust deed. Milling Co. v. Eaton, Guinan & Co., 86 Texas, 401.

The testimony of Harrell shows, that out of the proceeds of the entire property conveyed to him he has been paying claims against Burns & Munn in the order named in the deed of trust, and a balance of about $600 is still due the Moline Plow Company. His testimony does not show when he paid any creditor. His testimony was given on the trial, about April 6, 1892, and it can not be determined that any payment, which would be construed as an acceptance, was made before plaintiff's writ was levied. It devolved upon the trustee to put the court in possession of facts that would defeat the right of plaintiff under its levy. It is impossible to say that this has been done.

The court below in his conclusions of facts finds, that "the Moline Plow Company, John A. Webb, and perhaps others, had agreed to accept the terms and benefits of the trust prior to the issuance of the writ of sequestration." But we find no evidence in the statement of facts to support the finding. The finding itself is only as to two of the creditors, and, if supported by the testimony, would show that only a part of the proceeds of the goods were legitimately applied to the secured debts. John A. Webb's debt amounted to $61.70, and that of the Moline Plow Company by note principal $707.08, and by account $1367.56, a total of principal of $2136.34. The evidence shows that Harrell, from sales of the merchandise, had realized $5000 cash out of the assets conveyed to him.

Plaintiff assigns, that the court erred in holding that the conveyance to Harrell conveyed title as against plaintiff, because none of the preferred creditors had agreed to accept its benefits before levy of the writ of sequestration. This assignment, as we have seen, must be sustained, unless there are other reasons why plaintiff could not recover.

Harrell having taken immediate possession of the property under the deed of trust, and having held the possession except as interfered

with by the writ of sequestration, it would be immaterial whether the trust deed was duly registered as a chattel mortgage. It was deposited with the clerk, however, on the day of its date and filed the same day. Sayles' Civ. Stats., art. 3190b. After being so filed and recorded it was withdrawn by the trustee, and has not since been returned. In such case, the mere filing would not be a compliance with the statute so as to secure full rights of registration. Sayles' Civ. Stats., art. 3190b, sec. 2. Its execution being followed by immediate delivery and actual possession of the trustee, continued as stated, gave the instrument effect as if duly registered.

According to the foregoing, we would unhesitatingly reverse the judgment of the court below; but there is a matter not yet discussed, which will preclude any recovery by the Parlin & Orendorff Company. They are not in an attitude to maintain the suit. They indorsed at least one of the notes given by Burns & Munn for the goods to a bank in Illinois, thus making their election to rely on their right to enforce the contract of sale. Upon failure of Burns & Munn to pay the purchase price of the goods, they could elect to sue on the notes for the debt due, or to abandon the sale and recover the goods. They could not, after electing to abide by the sale, by transfer of the notes or one of them, sue to recover the goods sold.

In the case of Bank v. J. H. Thomas & Sons, 69 Texas, 237, it was decided by the Supreme Court of this State, that when the owner of personal property transfers its possession to one who executes his notes for the purchase price, and by a contract executed at the time, the title to the goods is to remain in the vendor until the price is paid, and on default of payment the vendor may regain possession of the goods, the vendor may elect to enforce payment of the notes or recover possession, but that he could not do both; and that the assertion of one right is the abondonment of the other; that the transfer of the notes was an election to enforce payment thereof and an abandonment of the title, investing it in the vendee. "The contract once abandoned," says the court, "could not be restored by any action on the part of the vendors and the indorsees without the consent of the vendee." And it was held, that if the vendors repossessed the notes, they thereby obtained only such rights against the makers as were held by the parties (the indorsees) from whom they received them—the right to enforce their payment by suit against the makers. "Had the notes been indorsed simply for collection the case might have been different, as no suit had been brought upon them; but as to this there was no proof, and the presumption is, that the sale of the notes was absolute and for a valuable consideration."

The transfer of one of the notes, as shown in the case before us, had the same effect as to election of rights under the contract as the transfer of all of them. Upon the ground, then, that plaintiff could not recover the property after having elected to enforce payment of the

purchase price, we conclude that the judgment of the lower court must be affirmed, and it is so ordered.

*Affirmed.*

Delivered October 31, 1894.