# MAY 9, 1934

## Frank Arp v. The State.

No. 16190.   Delivered January 3, 1934.
Appeal Reinstated February 21, 1934.
Rehearing Denied May 9, 1934.

The opinion states the case.

*Vance Swaim,* of Crowell and *John L. Poulter* and *J. E. Dycus,* both of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of cattle; the punishment, confinement in the penitentiary for two years.

It is recited in the transcript that appellant entered into recognizance after notice of appeal was given. The recognizance is not brought forward in the transcript. When the accused is enlarged, this court is without jurisdiction in the absence of a proper recognizance or appeal bond. Hudgins v. State, 36 S. W. (2d) 488.

The appeal is dismissed.

*Dismissed*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON REINSTATEMEN TOF APPEAL.

LATTIMORE, JUDGE.—The record having been perfected, the case is re-instated and now considered on its merits.

The facts conclusively show appellant's guilt. He was in the meat peddling business with Pybus. On Sunday October 9, 1932, he and his brother got from Pybus a Model T Ford car. A butcher knife, steel and saw were in the car. When Pybus got his car back on Monday following, said articles were not in it. At the time of trial he said he had not seen them, but identified them when they were shown him in the court room. On the day referred to, in the afternoon, Mr. and Mrs. H drove out to a small ranch some nine miles southwest from Crowell, their home. According to their testimony, there was but one road leading to this pasture and it entered the north gate. They

drove in this gate, turned across to a field and tank from which they could see the barn and house on the place. They saw a car near the barn and some one go toward it. They at once drove toward the barn. A car was heard driving off toward said north gate, but because of trees it could not be seen. Near where they had seen the car first, they found the freshly killed carcass of a calf belonging to Mrs. H. It was partially skinned. Blood was still running from it. It had been shot and its throat cut. H later got a bullet out of its head. Discovering the calf, they drove at once back toward the north gate and saw a car leaving, being some few hundred yards from the gate. The tracks of a car were seen at the gate, which were not there when H came in. They pursued the car, which both said was an old Model T Ford, and looked like the one they had seen at their barn. When they overtook and passed it they said appellant and his brother were the occupants. H drove on and notified officers.

On the road being traveled by appellant and his brother, some three miles away from said pasture, lived Mr. Box. His son Leo, seventeen years old, testified that on the afternoon in question he was coming toward his home, and was overtaken some distance before getting there, by appellant and his brother in a Ford car. He got in with them and the three went to the Box home. No one was there when they arrived. Appellant and his brother told Leo they had already been to his house, and had put a knife, a saw and a gun in the house. Leo went in with them and observed their rifle under one bed, their meat saw under another, and their butcher knife on the incubator. They told him they had been down to H's place killing a calf. They took the gun, saw and knife and put them in their car, but in a few minutes took them out and put them in the smokehouse. This was before the officers came and arrested appellant and his brother. The road by the Box home ran north and south. South down the road was the H pasture. North up the road was Crowell. Leo said he was there when the officers came and arrested appellant and his brother. He did not know where they had been when they overtook him on the road. He did not know what became of the gun, saw and knife, but one Bob Thomas came out to his house several days after the arrest of appellant and asked him about them. Pybus, while a witness, was shown by appellant's attorney a knife, steel and saw, which he then identified as his, and as the ones which were in his car when he lent it to appellant,—and said he had not seen them since.

Appellant denied his guilt; said he was not in the H pasture the day of the alleged theft, denied taking any knife, saw or gun to the Box place, denied seeing Leo Box and having any conversation with him, but admitted he and his brother were on a road north of the H pasture when passed by them in a car. His claim was that he and his brother had driven down said road looking for Fred Bell, and failing to find him, they turned around and came a short distance back, were passed by the car of H, and later found Fred Bell on horseback. Appellant testified that after talking to Fred, who searched his car, they went on up to the Box home where they were arrested. He testified that he did not remember to have seen any officers to talk to them up at the Box home. He said he was drinking. He admitted on cross-examination that he signed and swore to an application for continuance in this case because of the absence of Ralph Bell, who later appeared and testified. The application was introduced by the State. It set up that Bell would swear to certain matters and facts. Ralph Bell swore that some of the things set up in the application for continuance were contrary to the facts. He did say, however, that he left Crowell with appellant and his brother the afternoon of the day of the alleged theft and went with them to a point south of the Box home where he got out. He said he understood they were going on down that way looking for his brother Fred. He also admitted that at a former term when this case was called, he was not in Foard county, but was in Childress where he registered as Sam Reed.

We see no error in allowing Mrs. H to testify that the top of the car in which appellant and his brother were riding when overtaken by them, "Looked exactly like the top of the car they saw down in their pasture;" nor in letting H testify that he thought the car they passed on the road (occupied by appellant and his brother) was the one he saw in his pasture.

Officer Lovelady said he talked to appellant, or rather to appellant's brother at the home of Mr. Box on the occasion of their arrest. At the time, according to appellant himself, he was drunk and did not hear what the officer said. It appears from the bill that appellant's counsel, in a preliminary examination of the witness, brought out from him that appellant was sitting by his brother in the car at the time of said conversation but said nothing when a question, objected to, was asked by said Lovelady at the time of the arrest. The trial court seems to have been of opinion that appellant and his brother were not then under arrest, but we entertain a different view. How-

ever, we are of opinion that in the light of all the facts the matter was of no possible harm to appellant, and of such little materiality as to not call for a reversal. The officer testified that he asked Vernon Arp, appellant's brother, where he had been, and he said he had been south of there to take a fellow home, but he did not know who he was. The bill sets forth no explanation as to what trip or occasion was referred to in the question. It is vague and indefinite. It appears from the testimony that appellant had carried Ralph Bell to some point south of the home of Mr. Box, where the arrest was effected, that afternoon, and that appellant and his brother had gone on from the place where Ralph Bell got out of their car, looking for Fred. It was also in testimony that after having gone to the Box home, apparently after being seen on the road coming from the H pasture, appellant and his brother had driven south of there and were coming back when they picked up Leo. As we view it, this entire matter is of little, if any, importance.

Ralph Bell, as a witness for appellant, having testified contrary to what appellant set out in his application for continuance as the testimony Bell would give if present, we see no reason why the witness might not be asked, while on the witness stand, about the matter; nor why appellant might not be asked as to the same matter when he became a witness. Nor do we see any error in admitting the application for continuance to show what appellant had set up and sworn to therein which was contradictory of his evidence.

Being of opinion that no reversible error appears, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant's position that he and his brother were under arrest when the conversation occurred between officer Lovelady and appellant's brother seems well taken and was recognized in our original opinion. We also agree with appellant in his claim that the statement of a co-defendant is not provable against accused though made in the latter's presence if the parties are under arrest at the time the statement is made. Under the legal principle mentioned appellant again insists that we were wrong in the disposition made of bill of exception number three, wherein complaint is made of receiving evidence from Lovelady that in response to a question asked Vernon Arp as to where he had been, the latter responded that "he had been down south to take a fellow home," but that he

didn't know him. The question was disposed of in our original opinion on the ground that even though inadmissible the matter was not shown by the bill to be of such serious import as would justify predicating a reversal thereon. We have again examined the bill and our views have not been changed regarding the matter. If the bill could be supplemented by appellant's motion for rehearing, and the statement of facts, the point might present a somewhat more serious question, but even then it would be doubtful whether it was of sufficient moment to demand a reversal. While a bill of exception must necessarily be regarded in the light of the statement of facts (Martin v. State, 107 Texas Crim. Rep., 151, 295 S. W., 1098, Wheeler v. State, 118 Texas Crim. Rep., 358, 42 S. W. (2d) 69), yet ordinarily the statement of facts will not be looked to in aid of the bill. Many cases supporting the latter proposition will be found cited under section 213, Branch's Ann. Texas P. C., among them, McGlasson v. State, 38 Texas Crim. Rep., 351.

The second proposition urged in the motion for rehearing is that the trial court committed error in permitting the State to introduce in evidence an application for continuance by appellant at a former term of court. The bill presenting the question shows that after appellant had taken the witness stand in his own behalf, and had completed his testimony on direct examination, the district attorney exhibited to appellant the application for continuance, and appellant admitted that he had signed and sworn to same, whereupon the district attorney offered it in evidence, and it was admitted over appellant's objection. It is conceded that if appellant had testified to things contrary to statements contained in the application for continuance, that the latter would have been admissible for impeachment purposes if the proper predicate had been laid, and the matter is presented in the motion for rehearing as though the application for continuance had been admitted over the objection that no such predicate had been laid. However, when we go to the bill complaining of the matter we find the only objection urged was that the application for continuance was "immaterial and prejudicial." As against the objections mentioned the court's ruling was not erroneous. As we understand the record appellant's evidence in some particulars was in conflict with the averments in the application for continuance. Doubtless, if the trial court's attention had been directed to the want of proper predicate the State would have been required to meet such an objection.

We think there is no merit in appellant's third proposition,

which is that the averment of ownership in Mrs. Mabel Houghston is not sustained by the evidence. We understand from the record that the calf alleged to have been stolen was the increase from a cow which was the separate property of Mrs. Houghston. Mr. Houghston testified that he had an agreement with his wife that all the cattle on the place from which the animal was stolen, both grown cattle and their increase, was the wife's separate property. This agreement as between the husband and wife was valid. Jordan et al. v. Mercantell, et al., 147 S. W., 357. Certainly one who might steal any of said animals would have no such right therein as would enable him to assail such agreement. Article 402, C. C. P., reads in part as follows: "Where it is the separate property of a married woman, the ownership may be alleged to be in her, or in her husband." Kauffman v. State, 53 Texas Crim. Rep., 209.

Believing the case to have been properly disposed of originally the motion for rehearing is overruled.

*Overruled.*