## WILL HEATON V. THE STATE.

No. 17096.  Delivered January 30, 1935.
Rehearing Denied November 13, 1935.

The opinion states the case.

*Baker & Baker,* of Coleman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for theft of a hog; punishment, two years in the penitentiary.

The accusation was theft of a hog. In the indictment ownership, etc., of said hog was laid in Irene Ruff.  Mrs. Ruff was a married woman living with her husband on a 1600 acre ranch.  Mr. Ruff was not at his house when the hog was taken, but was somewhere out on the ranch.

Mrs. Ruff testified that she saw appellant carry the alleged stolen pig from where it was shot and put it in a car which she had met ten or fifteen minutes before that, and in which were appellant and one Jess Walker.  She saw three of her pigs rooting by the road near a fence on her property just before she met appellant and Walker.  She and her husband went the next morning to where she had seen appellant carying

the pig, and inside their fence was blood and brains, and on the fence blood and black hog hair, and a trail of blood led to where the car stood. Jess Walker testified that he was with appellant when appellant shot the pig, and that they later divided same. This witness was treated as an accomplice. The testimony is sufficient to support the judgment.

In various ways appellant raises the propriety of the averment of ownership in Mrs. Ruff. He asserted that Mrs. Ruff being a married woman, living with her husband on the ranch at the time, it should have been alleged that Mr. Ruff was the owner of the hog. Also that the proof showed theft, if at all, of community property, in which case a conviction could not stand where the indictment charged ownership in the wife. Our State's Attorney takes the position that the proof in this case fails to show that the hog was community property, but most strongly supports the conclusion that it was the separate property of the wife,—and that in any event all the testimony shows a special ownership in her, in that she had the exclusive care, control and management of said hog at the time it was taken.

Mrs. Ruff testified: "I had fourteen head of hogs, I had fed them that morning in the pen * * * I saw three of these pigs down by the fence * * * They were on my property. * * * He (appellant) was sarrying a pig from the fence and putting it in the car. * * * I saw the defendant raise up the back lid of his car,—it was a coupe,—and put the pig in there. * * * That night when I fed the hogs I counted them and I only had thirteen. * * * That was my hog. * * * I owned the mother of the pig. The mother of the pig was not raised on our ranch but the pig itself was. * * * I missed the pig on the night of the 15th. I fed the pigs that night and there were only thirteen there. *.* * The mother of this pig that was taken is my hog. She belonged to me."

Mr. Ruff testified: "My wife owned some hogs out there. On the 15th of June I was not at the house but was out in the pasture. I got back to the house about five o'clock in that afternoon." No questions were asked this witness on cross-examination.

Walker, the accomplice witness who was with appellant when the latter shot the pig in question, got same and put it in the car, and later skinned it and divided with witness,— testified for the State. He said that appellant, while they had the pig in the car, told Fritz Wilheim that he had killed one of old lady Ruff's shoats; also that when they got to the home of

witness, appellant there told the wife of witness that it was old lady Ruff's hog. Witness admitted hauling the hog in his car after appellant told him that it belonged to "Old Lady Ruff." Mr. Highsmith testified that he recalled the incident wherein Mrs. Ruff was supposed to have lost a hog.

We have set out all the testimony appearing in this record shedding light on the question of ownership of the alleged stolen hog.

Art. 402, C. C. P., lays down statutory rules in reference to how ownership should be alleged in an indictment. There is no direction regarding such allegation in case the ownership be in the community composed of the husband and wife, further than the inference arising from the statutory statement therein that when property is owned in common or jointly by two or more persons, the ownership may be alleged to be in all or either of them. It is also said that where property belongs to an estate, ownership may be alleged in the administrator, executor or in any one of the heirs. It is also provided that ownership of the separate property of a wife may be alleged to be in her or in her husband. When we look to our laws defining theft, we note that Art. 1414, P. C., provides that possession may be in one person and ownership in another, and possession is defined in Art. 1415, id., as having the actual care, control and management of the property at the time same is taken.

Mrs. Ruff testified positively that the pig stolen was her property, and she so stated again and again. Mr. Ruff also so testified. In a case such as this, where we are not called on to decide the issue of ownership in a contest between rival claimants for the property, and in which no defensive theory rests on a claim that the accused took the property relying on gift or purchase from the husband, there seems little room for controversy as to what we should hold. Whether Mrs. Ruff's separate ownership of the pig in question came about by gift from or agreement with her husband,—which under all the authorities could make it separate property, (see Arp v. State, 70 S. W. (2d) 997), was not developed in the record, and hence is not before us; but the fact remains that both Mrs. Ruff and her husband swore that the pig was hers. But one slight circumstance appears in testimony supporting appellant's contention that said pig was community property. This was Mrs. Ruff's statement that the mother of the pig was not raised on their ranch, but the pig was. We note that Mrs. Ruff does not say that she owned the mother of the pig before the pig

was born; nor does she state when, how or in what manner both mother and pig became her property; nor did appellant see fit to go into such inquiry either of Mr. or Mrs. Ruff, both of whom were witnesses. If it was satisfactory to appellant to rest the question of ownership on the testimony of each and both of these people to the effect that the pig was Mrs. Ruff's property, it must be satisfactory to this court, as it appeared to be to the trial court. The averment of ownership in Mrs. Ruff was met by the proof, and is sufficient.

In Arp's case, supra, the alleged stolen property was a calf, the increase of a cow, which was the separate property of Mrs. Arp. Inquiry developed that there was an agreement between Mr. and Mrs. Arp that all increase of the separate property of the wife should also be her separate property. This we held sufficient to support a conviction where the allegation was that the property taken was the separate property of the wife. In the record before us it is not shown that the sow, the mother of the pig, was the property of Mrs. Ruff before said pig was born, and both sow and pig could have become hers by gift, and since both Mr. and Mrs. Ruff swore that the pig was hers, and such fact was not disputed,—this seems to fully satisfy the law of averment of ownership in the wife in a case of theft of separate property of the wife. The proposition of being separate property of the wife is further strengthened by what Mrs. Ruff said as set out in our discussion of bill of exceptions No. 2, infra.

Appellant's bill of exceptions No. 1 is qualified by the statement of the trial court who says that the testimony does not show that the property in question was community property, but on the contrary shows it to be the separate property of the wife. On this same point, in considering bill of exceptions No. 2, we note when Mrs. Ruff was asked the question as to whom this hog belonged,—after some wrangling between counsel, the question finally propounded was "Was this hog your property or was it yours and your husband's?" to which witness replied: "No, sir, it was mine." Another question was asked as follows: "It was your hog?" Witness answered "Yes sir." We can not agree with appellant that any of his bills of exception,—all of which revolve around and bear upon the proposition we have been discussing,—reflect error.

We deem it not necessary to go into the other proposition advanced by the State's Attorney, viz: that in any event the care, control and management of the pig in question was shown to be in Mrs. Ruff at the time it was taken.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant moves for a rehearing. If we properly understand this record appellant's motion appears to be predicated not on the lack of proof that the stolen pig was the property of Mrs. Ruff at the time it was stolen, but upon a complaint that there was no explanation of how it became her property. The record is silent as to how or when Mrs. Ruff acquired the sow that was the mother of the stolen pig. This sow is mentioned twice in the record, each time by Mrs. Ruff. In the first paragraph of her cross-examination she testified: "I owned the mother of the pig. The mother of the pig was not raised on our ranch, but the pig was." Again, on re-direct examination, Mrs. Ruff swore: "The mother of this pig that was taken is my hog, she belonged to me." As to the ownership of the stolen pig Mrs. Ruff swore: "On the morning of the 15th of June, 1933, I had fourteen head of hogs * * * They were just pigs and would weigh something like fifty or sixty pounds apiece. I had fed them in the pen that morning, and they were all there. * * * That night when I fed the hogs I counted them and I only had thirteen. * * * That was my hog."

Bill of exception number two shows the following: Mrs. Ruff was asked: "Who did this hog belong to?" Appellant's attorney, in the presence of the witness and the court, objected and said, "We object to that as calling for an opinion and conclusion on the law of ownership." The State's attorney said: "She can testify if she knows who it belongs to." Defense counsel also further objected and said: "She can tell the facts and let the court and the jury say who the hog belongs to." The State's attorney then asked the witness the question: *"Was this hog your property, or was it yours and your husband?"* The witness answered: "No, sir, it was mine." "Q. It was your hog?" "A. Yes, sir."

This bill bears the following qualification: "It must be apparent that had defendant's counsel pursued his cross-examination of the fact of the birth of such pig before the acquisition of its mother in which case it would have been separate property or to the fact of its birth after the acquisition of its mother in which case it would have been community property.

Defendant's counsel omitted to make such inquiry, and thereby failed to disprove Irene Ruff's ownership of the alleged stolen pig as her separate property."

When Mr. Ruff took the stand he swore on direct-examination: "On or about the 15th of June, 1933, my wife owned some hogs out there." On cross-examination no questions were asked. The witness Walker testified that appellant told him he had killed one of "old lady Ruff's" shoats over there, and later repeated in the presence of the wife of witness that it was "old lady Ruff's" hog. The above is all the record on the question of separate or community ownership.

There can be no dispute of the fact that by gift from the husband of his interest in community property to the wife, such property could become her separate property. The Supreme Court of this State has so said in many cases. Sorenson v. Bank, 121 Texas, 479; Cauble v. Refining Co., 115 Texas, 1; Cox v. Miller, 54 Texas, 16, and authorities cited. This court has also so said in a recent theft case. Arp v. State, 70 S. W. (2d) 997.

Clearly the pig in question was owned by one or both of these two persons. No other person had any interest whatever in the animal. These two persons were both grown and mature citizens. They both testified. It would be an unwarranted conclusion for this court to say that they intentionally falsified, or that they did not know what they affirmed under oath; namely; that on June 15, 1933, this pig was the property of Mrs. Ruff. No showing appears of curtailment of appellant's right of cross-examination of either of said witnesses in order to draw out the details of how the pig became the property of Mrs. Ruff.

This court has held in many cases that the owner of alleged stolen property may give parol testimony as to its ownership, and it is likely that resort to such proof of ownership is had in a large majority of theft cases. It would be most novel to here state and lay down as a rule that when all parties who may have owned interests in a specific property have sworn in open court that its ownership is in A on a date in question, that a person convicted of the theft of such property—not defending on the ground that he owned any interest therein, or had been given any right to take same by someone claiming an interest—may have his case reversed on the proposition that said parties did not know what they were talking about, and that this court should assume that they did not so know, and that they swore what was not true. We can not agree

that appellant is now entitled to have us grant his rehearing and reverse this case simply because Mr. and Mrs. Ruff did not explain how the pig became the property of Mrs. Ruff.

This court must give effect to Mrs. Ruff's declaration that the pig was her property and not that of her husband and herself. Such ownership—when it could legally come about in more ways than one—when affirmed to exist by both Mrs. Ruff and her husband, must stand as far as this court is concerned.

If it had been developed that Mrs. Ruff was claiming ownership in the stolen pig solely because its mother was her separate property, the pig having been born after coverture of Mr. and Mrs. Ruff, the law would fix the status of the pig as community property, and we would have a different question to deal with.

But, as we understand the record, the motion for rehearing is overruled.

*Overruled.*