IIejipiíiul, Ch. J.
This was a trial, of the right of property. The appellee, Gainer, had an execution against Littleberry Camp, issued on the 18th June, 1852, which was levied on two negroes, Ambrose and Charlotte, as his property, on the 18th August, 1852. This claim was interposed by the appellant, Mosely, on the 23d of the same mouth. It appeared b.y the pleadings aud the evidence that these negroes had been previously leviecl on in the year 1S31 by a former execution in the same case between Gainer and Camp; that the appellant, Mosely, had also, on that levy, interposed his claim; that the issue then made had been tried and determined in favor of the appellee Gainer, and that the property was subject to his execution. But in the meantime, and before further proceedings were had on that execution, the judgment on which the execution issned had been revised aud reversed by the Supreme Court. The facts in relation to said appeal and reversal are deducible iuferentially and not from direct proof in the record. In the interval between the reversal of the judgment aud the levy of - the execution which was issued on the judgment as pronounced in the Supreme Court, the appellant, Mosely, having previously had a mortgage ou said slaves, procured from Camp an absolute bill of sale. The appellee, Gainer, in the issue made up on this second trial of right in the property, alleged the facts in relation to the former trial, and insisted that, by virtue of Lis previous execution and levy, he liad, at the time of the sale to'Mosely, a subsisting lien on said property; that the purchase by Mosely was a fraud upon his, Gainer’s, rights, both legal and equitable, and was made through collusion between the said Mosely anil Camp for the purpose of injuring plaintiff and embarrassing and delaying him in his just aud legal remedies secured to him by law.
The defendant, Mosely, denied the allegations of the plaintiff, averred that he was, by mortgage, the owner of the slaves before the issue of the original-execution, and that at the issuance of the last he liad full title by a bona fide iwrchaso, on a good aud valuable consideration, &c.
At the trial tjie mortgage, bill of sale, and proceedings on the former trial were in evidence. The'sheriff testified that the negroes were in his possession, he permitting Camp to take them to his farm, under guarantees, at the timq file execution of June 18th, 1S52, was placed in liis hands and levied on said *198 negroes; that Mosely knew of the judgment, and must have known of the last, as he did of the previous executions; that the previous execution, under which the property was to have been sold, was returned to the attorney of the plaintiff on the day tiiat the property was to be sold; and that the latter execution was placed in his hands as sheriff and levied on the same day.
The coiu't charged—
1st. That, if the negroes now claimed were the same that were claimed on the former trial, and if they came into the possession of the sheriff by a legal execution and levy, the possession was vested in the sheriff, and though the original judgment was revised and corrected by the Supreme Court, and execution issued thereon and placed in the hands of the sheriff before the original execution was called in, the lien continued and the sheriff might sell under the jiew execution, and that the jury would therefore find for the plaintiff.
2d. That every conveyance of slaves, made and contrived of collusion, to the intent or jiurpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, or debts, is clearly void; thafif Mr. Camp made the conveyance in question with the intent to delay, hinder, or defraud the plaintiff in the collection of his debt, and if Mosely knew of that intent and purpose and so purchased the property, although he may have paid a valuable consideration and his deed were duly recorded, yet the conveyance is void.
These charges were signed by the presiding judge. Beneath his signature there followed a memorandum that the judge refused to give, as he was asked, the charge that a debtor has the right to prefer one creditor to another, but this was not authenticated in any mode which authorize its being noticed by this court.
The jury found that the negroes were subject to the execution. They also found their value, and that the bill of sale between Camp and Mosely was void. Judgment was rendered in conformity with the verdict, and for damages, the value of the property as assessed by the jury. A motion for a new trial was overruled.
It was assigned for error that the court erred in the first proposition of his charge.
2d. That ho erred in giving the second charge, as it was an abstract proposition of law.
3d. That lie erred in refusing to charge that a debtor had á right to prefer one creditor to another.
4th. That there was error in overruling the motion for a new trial, and—
5th. That the verdict was contrary to the law and the evidence.
We are of opinion that .the first proposition of the charge, which was to the effect that the lien of the original execution continued to subsist after the judgment upon which it issued was revised and corrected by the Supreme Court, wiis erroneous. Had a sale taken place previous to the reversal of the judgment it would have been valid. But where a levy only had been made the lien was lost, and a new levy on the subsequent execution must be made to authorize a sale of the property. Ho authorities have been adduced by counsel in support of the affirmative or negative of the proposition, and we have not time to make investigations which the parties themselves have declined. Whether the judgment of the Supreme Court was a total reversal or not does not appear by aiiy positive, proof in the case. The presumption is that it was, as the original execution purported to issue on. a judgment of the District Court rendered in July, 1831, for one thousand and fifty-six dollars principal, whereas the second execution was on a judgment in the court below in November, 1S44, and in the Supreme Court May, 1852, for six hundred and eighty-eight dollars and eighty-nine cents. There is so wide a difference between these judgments that we must suppose the original judgment to have been fully reversed.
■ That tiie second proposition is legally correct cannot be questioned; but it is contended that it had no application to the ease, as the facts did not disclose any fraud between Mosely and Camp. The plaintiff' had averred fraud and collusion, and the question is whether the facts established the allegation and authorized the court to give the law of theproposition in charge to the jury.
*199 The existence of the judgment in favor of G-ainer against Camp was well known to Mosely, the appellant, at the time of his making- the purchase. The fact that these identical negroes had keen levied upon under the original execution was equally well known; for it was alone through the persevering- efforts of Mosely himself that the negroes were not sold and the judgment satisfied. While the struggle to prevent the sale of these negroes was continuing, the judgment authorizing execution was reversed, hut another one was pronounced on which execution 'was shortly issued, and in the interval, near about one month, elapsing between the reversal of the judgment and the subsequent execution, Mosely, with a perfect knowledge of all the facts, procured from Camp the bill of sale through which he now claims title. There is no evidence that the negroes ever were'in Mosely’s possession. From the testimony of the sheriff they were remaining on the farm of Mr. Cam]). The mortgage purports to secure the payment of a note due from Camp to Mosely, and to save Mosely harmless from the payment of another note which he had signed as security for Camp. But there was no proof that any debt existed in fact from Camp to the appellant; or that the latter had been, or was likely to be, loser by his suretyship. There was no proof even of a valuable consideration for the bill of sale, although such proof if given would not have supported the sale, unless the consideration had been, the satisfaction of a pre-existing debt. To state the circumstances of the case is to develop the indicia of frirad and collusion by which it is characterized. As they stand upon .the record they reveal a determined purpose to delay, hinder, and embarrass the plaintiff in enforcing his execution and the collection of his debt.
Wet are, of opinion, therefore, that the charge was not only sound as a legal proposition, but that it had direct application to the facts in evidence,- and this being a sufficient ground for the verdict and judgment the appeal from them cannot be sustained."” This is the only ground on which the judgment can rest for support.
The iirst proposition is, as before stated, erroneous; and if the court refuse to charge, but of this we have, no sufficient evidence, that a debtor cannot prefer one'creditor to another, this also, as a general proposition, cannot be maintained. But upon the whole record the judgment is right, and it is therefore ordered to be affirmed.
Judgment affirmed.
Note 75. — Castro v. Illies, 22 T., 479.
Note 76. — Edrington v. Rogers, 15 T., 188; Wright v. Linn, 10 T., 34; Mills v. Howeth, 19 T., 257; Wood v. Chambers, 20 T., 247; Humphries v. Freeman, 22 T., 45; Baldwin v. Peet, 22 T., 708; Howerton v. Holt, 23 T., 51; Belt v. Raguet, 27 T., 471; Walcott v. Brander, post 419.