## WM. COX V. CHRISTINA MILLER.

(Case No. 912.)

1. COMMUNITY PROPERTY — PRESUMPTIONS. — In the absence of evidence to the contrary, all property found in the possession of the husband is community property.

2. HUSBAND AND WIFE. — A post-nuptial agreement between the husband and wife, that the wife shall be jointly interested with the husband in a mercantile establishment, one-half of the profits of which shall be her separate property, cannot change their property rights to that of partners, or convert community property into the separate property of the wife. Such a result would be in conflict with and subversive of the law regulating marital rights in Texas. Pasch. Dig., arts. 2749, 4632-5, 4641-2.

3. HUSBAND AND WIFE — SEPARATE PROPERTY. — Though the husband may, if it be done *bona fide* and openly, reimburse the wife from

community or his separate property, advances received from her, in preference to his other creditors, or make her a direct gift of his separate property or the community, a mere agreement between husband and wife cannot change the character and nature of their rights and interests in property owned and acquired by them, from that prescribed by law, and thereby relieve it from liability to be taken in satisfaction of community debts.

4. CREDITOR — PARTNERSHIP.— An individual creditor has no superiority of claim against individual assets over a partnership creditor.

5. FRAUD.— The fact that the result of a fraudulent deed is to secure the payment of a valid and *bona fide* debt, equal or greater in amount than the property conveyed, will not remove from the deed the taint of fraud as against the grantee chargeable with notice of the wrongful intent in its execution.

6. FRAUD — FRAUDULENT DEED.— The grantee or beneficiary in a voluntary deed made with fraudulent intent will be affected by the fraud, if he attempts to claim a benefit under it, though in fact he had no knowledge of the fraudulent intent of the grantor.

7. COMMUNITY AND SEPARATE PROPERTY.— Property purchased during marriage, whether by the husband or wife, is community property, and not the separate estate of the purchaser, unless made with separate funds.

8. FACT CASE.— See opinion for facts, under which a purchase at execution sale by the wife, of property levied on to satisfy a judgment against the husband, would vest no right in the wife as against the creditors of the husband attacking the sale for fraud, even though the amount of the bid was paid from the separate funds of the wife.

APPEAL from Cherokee.    Tried below before the Hon. Peyton F. Edwards.

The opinion states most of the material facts.    There was much evidence introduced to establish facts not deemed important in view of the opinion.

In addition to facts stated in the opinion, it should be stated that defendant offered in evidence an execution and judgment in the cause of E. J. Norton *v.* B. Miller, and the returns thereon by the sheriff, for the purpose of showing title in Mrs. Miller to the property in dispute. This execution and judgment was for about $150, and proceedings were had thereunder in April and May, 1876.

Plaintiff contended that the levy was, in law, no levy at all, and there was in fact no completed sale; that the

whole proceeding was illegal and void; and further, that it was only another act of B. Miller and wife to defraud his creditors and effectually put his property beyond their reach. This proceeding was especially attacked, because it was contended that there was no seizure under the writ, and therefore no valid levy, and that there was a failure to comply with the bid, and therefore no completed sale.

It appeared in evidence that the appellant was a creditor to a large amount, for money deposited and cotton shipped, of the firm of Alford & Miller, during and prior to the year of 1875; that B. Miller and Geo. F. Alford were the partners comprising the firm; that in the month of July, 1875, this firm was seriously embarrassed and heavily in debt, owing about $239,149.82; that about this time, while Alford was endeavoring to obtain relief, and, if possible, effect arrangements to enable the firm to continue its business, B. Miller, the partner left in charge at home, being advised by Alford of heavy losses sustained on cotton transactions then depending in Europe, in which they were concerned, without the knowledge of Alford and during his absence, began transferring property to his wife. The first conveyance was a deed of trust of date July 2, 1875, conveying to B. B. Cannon all his interest in a stock of goods, accounts, claims, cotton and everything pertaining to the business of Miller & Cannon, named as then existing in the town of Rusk, Texas, and purporting to convey only one-half interest then claimed by him, in consideration of $10,000, then acknowledged to have been paid him, and the further consideration of one dollar; stipulating that the said Cannon should hold and use the same as directed by Mrs. Miller and sell the same when so directed by her, and empowering her to appoint another trustee on conditions. Thus the matter stood till 17th November, 1875, when he executed to Cannon for use of his wife a second deed of trust, conveying all the

property mentioned in the first or prior deed, and also everything else owned or claimed by him, including his interest in the assets of the firm of Alford & Miller, referring to and approving the former deed, and reciting that:

"Whereas, on the 20th day of February, 1873, I became indebted to Christina Miller, my wife, in the just sum of $29,044.39, gold dollars, money which was separate property of hers, and which *she loaned to me at that date,* and for which I this day made, executed and delivered to said Christina Miller my promissory note in writing, in words and figures as follows, to wit:

($29,044.39.)          "RUSK, TEXAS, November 10, 1875.

"One day after date I promise to pay to Mrs. C. Miller or bearer, twenty-nine thousand forty-four and 39-100 gold dollars, at Rusk, Texas, same being for borrowed money, with ten per cent. from February 20, 1873, value received.                                        B. MILLER.

"And whereas, on the 16th day of July, A. D. 1874, the firm of Alford & Miller, of Galveston, Texas, of which firm I, the said B. Miller, was a member, borrowed of said Christina Miller the sum of seventeen thousand two hundred and six and 29-100 dollars, and for which said sum the said firm of Alford & Miller made, executed and delivered to said Christina Miller their promissory note in words and figures as follows, to wit:

($17,206.29, gold.)          "GALVESTON, July 16, 1874.

"One day after date we promise to pay to the order of Mrs. Christina Miller seventeen thousand two hundred and six and 29-100 dollars, with interest at ten per cent. per annum till paid, value received.

"ALFORD & MILLER."

Cannon was directed to use and control the property for the benefit of Mrs. Miller and in such manner as she might direct. He was authorized to sell at public or private sale and directs application as follows: First, to pay expenses of executing the trust; second, the interest that has ac-

crued or that may accrue on the note for $29,044.39; third, the principal of said note; fourth, the interest on the Alford & Miller note for $17,206.29; fifth, the principal of said note, and if there be any balance, to be paid over to B. Miller; and directs, if the said Mrs. Miller should require the property to be sold at public sale, it should be sold for gold, after ten days' notice, etc.; and concluding that this instrument is not to affect the former, and that it, the former deed, of date 2d July, 1875, was an absolute sale of the property named therein in part payment of the indebtedness of B. Miller to his wife, for which (he says) she holds his note for $29,044.39, just then executed, and declaring that this note should be credited with the same as soon as the said trustee could ascertain its value, etc. Cannon held this property till 16th day of March, 1877, when he made a deed of conveyance, whereby he conveyed everything mentioned to Mrs. C. Miller, except what had been otherwise converted into money or securities during the preceding two years; and he recited therein a consideration of $14,364.96, and credited the same on the $29,044.29 note. The evidence did not seem to establish the existence of an indebtedness from Alford & Miller. On the contrary, Geo. F. Alford testified that Alford & Miller did not owe Mrs. Miller.

*Nunn & Williams*, for appellant.

I. To make a valid levy it is essential that the property be actually seized, and taken into custody by the sheriff. Freeman on Executions, secs. 260, 261, 274, with many authorities cited in notes, including decisions of many of the states; Crocker on Sheriffs, sec. 425.

II. The officer may at his peril leave defendant in execution in possession, *but there must be a relinquishment by defendant* of right of sale or disposition, and there must be the assumption of exclusive possession by the officer. Freeman on Executions, sec. 261.

III. All intent to hinder, delay and defraud creditors

may be inferred from the fact that the defendant is permitted to retain the property some considerable time after the levy. Freeman on Executions, sec. 261. And this would seem to be conclusive if prompted by the plaintiff in execution. United States *v.* Conygham, 4 Dall., 358; Dean *v.* Davidson, 13 S. & R., 345; Corlies *v.* Stanbridge, 5 Row., 286; Levy *v.* Wallis, 4 Dall., 167; Kellogg *v.* Griffin, 17 Johns., 274; Swiggert *v.* Thomas, 7 Dana, 220; Impsey on Sheriffs, 125; Dickinson *v.* Cook, 17 Johns.; Lewis *v.* Smith, 2 S. & R., 142.

IV. The interference of the plaintiff with the writ, whereby he procures the property to be left with the defendant, generally renders the writ fraudulent and void. "But whenever it appears that the property was left with the defendant, not merely as its custodian, but with intent that he should continue to exercise full control and ownership, including the power to sell, the most indulgent of courts will not hesitate to treat the levy as fraudulent." Freeman on Executions, sec. 261; Cook *v.* Wood, 1 Harr. (N. J.), 254; Poress & Co.'s Appeal, 5 Wright, 273; Keyser's Appeal, Penn. St., 409; Swiggert *v.* Thomas, 7 Dana, 220; Cumberland Bank *v.* Hunt, 4 Harr. (N. J.), 167; Davidson *v.* Waldron, 31 Ill., 120; Heitzman *v.* Divil, 11 Penn. St., 264; Farrington *v.* Sinclare, 15 Johns., 428.

V. The particular property to be sold must be specified. Warring *v.* Loomis, 4 Bart., 484; Sheldon *v.* Loper, 14 Johns., 352; Cresson *v.* Stout, 17 Johns., 116.

VI. The property must be in a condition that the bidders can examine it, otherwise the sale is void. Tibbetts *v.* Jangnun, 58 Ill., 43; Herrod *v.* Bartley, 15 Ill., 58; Cresson *v.* Stout, 17 Johns., 116; Ainsworth *v.* Greenlee, 3 Murph., 470; Blanton *v.* Morrow, 7 Ind. Eq., 47; Linnendall *v.* Doe, 14 Johns., 222; Gaskill *v.* Aldrich, 41 Ind., 338; Baker *v.* Casey, 19 Mich., 220; Newman *v.* Hook, 37 Mo., 207; Rockwell *v.* Ellsworth, N. Y. Leg. Vos. 346; Brown *v.* Pratt, 4 Wis., 513; Gift *v.* Anderson, 5 Humph., 577; Freeman on Executions, sec. 290.

VII. A sale *en masse* has been held to be void. Lee *v.* Mason, 10 Mich., 403; Udall *v.* Kahn, 31 Mich., 197; Doe *v.* Smith, 4 Blackf., 228; Reed *v.* Diven, 7 Ind., 187; Banks *v.* Bales, 16 Ind., 423; Peel *v.* Broyer, 30 Ind., 332; Tyler *v.* Wilkinson, 27 Ind., 450; Gregory *v.* Purdain, 32 Ind., 453; Voss *v.* Johnson, 41 Ind., 19; Bordens *v.* Huber, 45 Ind., 235; Collett *v.* Gilbert, 23 Ind., 614; Kloff *v.* Witmoyer, 43 Penn. St., 219; Wenters *v.* Burford, 6 Col., 328.

*Willson & Willson,* for appellee.— As to the validity of the conveyances from B. Miller to C. Miller, Baldwin *v.* Peet, 22 Tex., 714; Baily *v.* Mills, 27 Tex., 437. As to her title by purchase at sheriff's sale, Coffee *v.* Silvan, 15 Tex., 362; Howard *v.* North, 5 Tex., 306; Rose *v.* Huston, 11 Tex., 326; Story *v.* Marshall, 24 Tex., 307; Smith *v.* Boquet, 27 Tex., 513.

*M. Priest,* also for appellee.

MOORE, CHIEF JUSTICE.— This is a proceeding under the statute for the trial of the right of property levied on by an execution from the district court of Galveston county, on a judgment in favor of appellant, Wm. Cox, against the firm of Alford & Miller. The property in question was pointed out by the attorney for appellant as the property of B. Miller, one of the defendants in execution, and was claimed by his wife, Christina Miller, as her separate property, not subject to seizure or sale under execution against her husband.

On the trial of the case a jury was waived, and its determination, both as to law and facts, submitted to the court, by whom judgment was rendered in favor of the claimant of the property, Christina Miller, upon the following findings, which were reduced to writing by the judge, signed and filed in the case, viz.:

"1st. That the claimant owned a large estate in her separate right at marriage, and that she invested such means

in the mercantile business, and that her husband recognized and treated her as an equal partner, and she and her husband recognized and treated the increase and profits of one-half of said business as her separate estate, distinct from the community estate; and that she therefore owned, in her own separate right, an undivided one-half interest in the said stock of goods, etc., at the date of the respective deeds of trust to Cannon, and of the levy and sale under execution, May 2, 1876.

"2d. That in addition, her husband, B. Miller, owed her about March, 1873, when they went to Galveston, $14,500. That he owed her of the account B. Miller No. 2, less payment made, amount at date July, 1874, $7,368.35, making a total, July, 1873, of $21,868.35.

"3d. That the said debt was an individual debt of B. Miller.

"4th. That the assets transferred in the deed in trust and conveyances by Miller & Cannon to C. Miller were the individual assets of B. Miller.

"5th. That B. Miller made the deed in trust and conveyances for the purpose of paying his wife said indebtedness and hindering and delaying the creditors of the firm of Alford & Miller.

"6th. That Mrs. C. Miller was in possession of sufficient facts to put her upon notice, by the use of proper diligence, of such intention by B. Miller.

"7th. That the sheriff's levy and sale on execution in case of B. Miller v. E. J. Norton was a valid levy and sale, and passed title to Mrs. C. Miller of all interest of B. Miller in said goods.

"8th. That the law is with the claimant; first, because the individual indebtedness of Miller to her, covered the amount of property conveyed in the first deed, which conveyed the goods in controversy, and this debt, though less than the amount stated in the later deed of trust as due her by B. Miller, was a prior claim to the claim of

the plaintiff, Cox, on the assets conveyed in the deed in trust dated July 2, 1875; second, because the title of whatever interest Miller had in the goods, etc., passed (if he had any) by virtue of the sheriff's levy and sale under the execution."

While other rulings made by the court during the progress of the trial were excepted to and assigned as error by appellant, the proper determination of the case upon its merits evidently depends upon whether these findings are supported by the evidence and warranted by the law applicable thereto. A consideration of the questions which they involve will therefore suffice for the determination of this appeal.

It is evident from an analysis of these findings, that in the opinion of the court below appellee was entitled to one-half of the property levied on, as her separate estate, by reason of her husband's recognition and treatment of her as an equal partner in the mercantile business carried on by him, with the exception of the business of Alford & Miller, and by the agreement between themselves that one-half the profits of such business should be her separate estate, distinct from the community estate; that the other half of the property levied upon became a part of her separate estate by reason of the deeds of trust to Cannon to pay or secure her husband's individual indebtedness to her; and this, notwithstanding the court found on the evidence before it that these deeds were made for the purpose "of hindering and delaying the creditors of the firm of Alford & Miller" (of which appellant was one), although appellee was chargeable with notice of such fraudulent intent; and if her right to the property could not be maintained on these grounds, then she acquired a valid title to it, by purchase at the sheriff's sale, made under execution on the judgment against B. Miller in favor of E. J. Norton.

In our opinion, none of these findings upon which the

judgment in favor of appellee is based are sustained by the evidence, or warranted by law.

In the absence of evidence to the contrary, it is to be inferred all property found in possession of the husband is community property (Pasch. Dig., art. 4698), and the burthen of proof devolves upon whoever desires to show that such is not the fact. It is not pretended that the stock of goods with which the business of Miller & Cannon was conducted, or any part thereof, was owned by appellee at the date of her marriage to B. Miller. True, it appears that Mrs. Miller owned a remnant of goods at the time of her marriage in 1862 which went into possession of her husband when he commenced merchandise in 1865, but the character, amount or value of this remnant of goods is not shown. Subsequent to that time, Miller had been a partner in two different firms, the last of which did a large and profitable business. The firm of Miller & Cannon had its origin in 1872, and seems to have carried a stock of ten to twelve thousand dollars. There is nothing in the record to warrant the inference that half of this stock was either the same goods owned by appellee on her marriage in 1862, or had been directly procured with them. We do not, however, understand, that, in the opinion of the court below, to constitute these goods a part of her separate estate, they must have been owned by her previous to her marriage, or have been acquired by or in exchange or payment for property, or other effects owned by her in her separate right. But that she became entitled to one-half of them as her separate property by reason of the agreement between herself and husband that she should be interested jointly with him in them, and that one-half the profits should be her separate property. But such an assumption cannot be maintained. It is directly in conflict with and subversive of the law regulating marital rights in this state. Pasch. Dig., arts. 4641–2. It is not pretended that there

was a marriage contract between these parties in writing, acknowledged and recorded as required by the statute, as must have been the case to give effect to such an agreement if made at the time of the marriage. And certainly no mere agreement or understanding made between them afterwards, could change their property rights as husband and wife to that of partners in a mercantile business, or convert community property into separate property of the wife. Pasch. Dig., arts. 4632–5; id., 2749.

In what has here been said we do not mean to deny that the husband, if he has wasted or converted separate property of the wife into community property, may not reimburse her for the same out of community property or his separate estate in preference to other creditors, if in doing this he acts openly and *bona fide*, or that he may not make to the wife a direct gift of his separate property or out of the community estate. What we mean to say is, that, by a mere agreement between husband and wife, they cannot change the character and nature of their rights and interest in property owned and acquired by them from that prescribed by law, and thereby relieve it from liability to be taken in satisfaction for the payment of community debts.

The only separate estate of appellee which there is any pretense for saying has been wasted or converted into community property by B. Miller, is the remnant of goods to which we have referred, the value of which has not been shown, and the sum of eleven thousand dollars gold. Eight thousand five hundred dollars of this sum was invested in a house and lot in Galveston, the title for which was taken in the name of appellee, and which it appears from the evidence she is now claiming as her separate property (unless we should include " some corporate money " and notes and accounts not shown to have been collected).

The statute gives to the husband the possession and

control of the wife's separate estate, and declares that the income or profits derived from such estate shall be community property. It cannot therefore be said from the testimony that B. Miller was justly indebted to his wife or the community estate chargeable on account of her separate property for exceeding the sum of two thousand five hundred dollars, when the deeds of trust were made by Miller to Cannon. The amount of this indebtedness is, however, immaterial, except as a circumstance strongly supporting the finding of the court, which we think was otherwise abundantly sustained, that these deeds were made for the purpose of hindering, delaying and defrauding creditors, and that appellee was chargeable with notice of the intent and purpose of their execution. 22 Tex., 479. Such being the case, they were void and inoperative as to creditors.

The court below seems to have supposed that because the property conveyed was individual assets of B. Miller, as the deed was made for the discharge of an individual indebtedness, though in fraud of partnership creditors, still appellee could claim the benefit of it, though she was affected with notice of the fraudulent intent and purpose of its execution. But such is not the law. An individual creditor has no superiority of claim against individual assets over a partnership creditor. Higgins v. Rector, 47 Tex., 361.

Nor will the fact that the result of a fraudulent deed is to secure the payment of a valid and *bona fide* debt, equal or greater in amount than the property conveyed, remove from the deed the taint of fraud as against the grantee chargeable with notice of the wrongful intent and purpose of its execution. Indeed, it has been often held that the grantee or beneficiary in a voluntary deed made with fraudulent intent will be affected by the fraud if he attempts to claim a benefit under it, though, in fact, he had no knowledge of the fraudulent intent of the grantor.

10 Tex., 393; 15 Tex., 188; id., 11; 16 Tex., 43; 19 Tex., 197; 22 Tex., 52; id., 479; id., 672; 25 Tex. Sup., 294; 26 Tex., 561; 27 Tex., 471.

What has been said is sufficient to show that appellee cannot claim the property levied upon as her separate estate, unless it became so by its purchase at the alleged sheriff's sale under the execution in favor of Norton. But in our opinion this can in no way aid or strengthen her claim to it. Property purchased during marriage, whether by the husband or the wife, is community property, and not the separate estate of the purchaser, unless made with separate funds.

Cannon states that the amount of the execution under which these goods were sold, was paid with appellee's separate money. But this was a mere conclusion of his. From his testimony the money used in payment was money received in the course of business of Miller & Cannon prior to this sale. If we are right in what we have heretofore said, appellee had no separate estate in the property or effects of this firm, and Cannon supposed the money used was appellee's separate estate, because he also erroneously supposed that she owned the goods in payment for which the money was obtained.

But if it had been shown that the money paid for these goods was the separate property of appellee, we are clearly of the opinion that it would have given her no right as against the creditors of Miller. Admit that the pretended levy and sale of them could be upheld in favor of Norton, the plaintiff in the execution, or in favor of an innocent purchaser, if there had been such an one, it cannot be so held as against the creditors of B. Miller. We think it abundantly clear from evidence in the record that this levy and sale was a fraudulent contrivance by B. Miller, to which appellee was a party (22 Tex., 503), to strengthen her previous fraudulent title and give color to her claim to the property by deed from the sheriff. 27

Tex., 513. There was in point of fact no levy upon the goods; no possession or control taken of them by the sheriff; no specific articles were exposed or offered for sale. The entire stock in the house and on the shelves, amounting in value to ten or twelve thousand dollars, or, in other words, the interest of the defendant in execution in them (he being in fact the sole owner), was cried off in bulk for the insignificant amount of four hundred and ten dollars, one hundred and fifty of which was paid in money to the sheriff and the balance settled by the delivery to him of a receipt by B. Miller, the defendant in execution. It should also be noted that B. Miller was, at the date of the levy as well as sale, in the possession of the goods, conducting and carrying on the business with Cannon, the other member of the firm (whose only interest was in the profits, but not in the goods), and continued to do so just as before this fraudulent sale, though under the pretense of being employed by his wife as her clerk. Further comment seems unnecessary, though the material furnished by the record is by no means exhausted.

The judgment is reversed, and such judgment is here rendered as should have been in the court below, subjecting the property levied upon to sale in satisfaction of appellant's execution.

REVERSED AND RENDERED.

[Opinion delivered October 23, 1880.]

On a motion to correct judgment, the former judgment was set aside, the judgment reversed and cause remanded. Associate Justice BONNER did not sit in this case.