### WHITE v. HEBBERD et al.
#### No. 3277.

Court of Civil Appeals of Texas. El Paso.
Jan. 2, 1936.

Brown & Brooke, of El Paso, for appellant.

Harrison, Scott & Rasberry and Turney, Burges, Culwell & Pollard, all of El Paso, for appellees.

PELPHREY, Chief Justice.

The sole question in this case is the correctness of the trial court's action in sustaining a general demurrer to appellant's petition. In appellant's brief there appears a summary of the allegations in such petition which is agreed to by appellees as being correct, and we shall here adopt it as our statement of the pleading in question. It reads:

"2. It was alleged that certain real property described as the east 6 feet 3 inches of lot 92 and all of lots 93 and 94 and 95, in block 8, Sunset Heights addition to the city of El Paso, located on Prospect avenue,

known as Willmary Apartments, were purchased by Mary E. Thompson in December, 1904, before her marriage to plaintiff, W. A. White, for the sum of $3,000.00, and title taken in her name, with the exception of lots 94 and 95 in block 8 aforesaid, which were purchased by her on February 7, 1905, before her marriage to W. A. White, by paying a cash consideration of $10.00 cash, and executing three vendor's lien notes, signed by her, in the sum of $500.00 each, and title taken in her name, but the deed was delivered to W. A. White after his marriage to Mary E. Thompson and by him placed of record March 9, 1905.

"3. That Mary E. Thompson married plaintiff, W. A. White, on February 19, 1905, and after her marriage, the plaintiff with his separate money paid off the three vendor's lien notes for $500.00 each, but the title to the lots remained of record in the name of his wife.

"4. Thereafter, plaintiff, White, built an apartment building known as Willmary Apartments, upon all of the property above described, and ever since said date he has been in full charge of said premises as owner and manager, living in and upon the premises; that Mary E. (Thompson) White contributed toward the building of the apartment house her interest in the lots and approximately $2,500.00 in cash, which was her separate property, and plaintiff contributed toward the building his interest in the lots and $18,346.58 in cash, which was his separate property. An itemized account of the expenditures, as Exhibit A, is attached to the petition and made a part thereof. It is further alleged that plaintiff and his wife, Mary E. (Thompson) White, also borrowed $7,000.00, which was contributed toward the building of the apartment house, the present estimated value of which was placed at $28,000.00. It was completed in 1916, and continuously occupied as a homestead thereafter by the parties until Mrs. White's death. It is alleged that at no time during the marital relationship did the plaintiff ever give or intend to give his interest in the real property to his wife.

"5. The petition sets up the fact that James Lee Hebberd was a son of Mary E. White by a marriage previous to her marriage to plaintiff, and that upon June 14, 1932, Mrs. White died testate. It is alleged that Mary Lee White and Mary E. (Thompson) White were one and the same person.

"6. The petition then described the property left by Mary E. White, describing as community property the Willmary Apartments at 411–415 Prospect avenue on the property above described, it being stated that the description south 6 feet 3 inches of lot 92, was an error as the description should be the east 6 feet 3 inches of lot 92.

"In addition to this there was listed as community property the furniture and furnishings of the Willmary Apartments, and property at 417 Prospect avenue, being the south half of lot 91 and adjoining 18¾ feet of lot 92 in block 8, Sunset Heights addition to the city of El Paso, and lots 1 to 24, block AV, Orr addition, Luna county, New Mexico, and 23.36 acres in the Valley Home tract in the Ysleta grant in El Paso county, Texas. Then there followed a list of the separate property of Mrs. White, there being included certain real estate situated in El Paso county, Texas.

"7. The petition alleged that on June 18, 1932, plaintiff, W. A. White, and James Lee Hebberd made application for letters testamentary and were duly qualified as independent executors under Mrs. White's will, which it was alleged was admitted to probate by the county court of El Paso county, Texas; the will was as follows:

" 'This is my last will and testament to take the place of any and all previous wills of Mrs. W. A. White formerly Mrs. Mary E. Thompson before my marriage to Mr. W. A. White.

" 'It is my wish and desire that the property at Myrtle and Newman sts. that I had before my marriage to Mr. White to go to my son James Lee Hebberd. Also one half interest in our community property, and homestead at 411-415 Prospect Ave. (known as the Willmary Apts.) are to go to my son James Lee Hebberd. But not to be devided or distrubed during the life time of my husband W. A. White also he to manage the property and continue things as he desires, to have all income. I also appoint my husband W. A. White and my son administrators without bond whatsoever, or any Court proceedings.

" 'Any and all other property in mine or my husband name shall go solely to my husband W. A. White.

" 'Dated this May the Fourteenth, 1932.
" '[Signed]   Mary Lee White.'

"8. Certain claims and charges were paid by Mr. White and are set up as a claim against the estate and as a charge upon the property, and it was alleged that on April 10, 1934, W. A. White resigned as independent executor of the estate and his res-

ignation was accepted by the county court of El Paso county, Texas.

"9. The plaintiff asserted his claim to be reimbursed by the estate of Mrs. White for his separate moneys expended in paying off the three vendor's lien notes aggregating $1,500.00; for his separate moneys expended in the construction of Willmary Apartments in the amount of $18,346.58, and for his separate moneys expended in paying off debts against the estate of Mrs. White, mentioned in paragraph 27 of his petition, in the sum of $3,798.39, making a total claim against the estate of $23,645.97, and if the reimbursement were not allowed, he then claimed said amount should be declared equitable against the property, and without waiving his life estate devised to him by the will of Mrs. White, he asserted his right as surviving spouse to a homestead for life in the community property.

"10. It is alleged on June 6, 1933, Lauramaude Fink McQuatters became the purchaser at a sheriff's sale of what was alleged in the sheriff's deed to be 'all the estate, right, title and interest which James Lee Hebberd had on September 29, 1932, or at any time afterwards, of and to the following described premises, viz: An undivided half interest in the East 6 feet 3 inches of Lot 92, all of Lots 93, 94 and 95, in Block 8, Sunset Heights Addition to the City of El Paso in El Paso County, Texas, subject to life estate of W. A. White.'

"It is alleged that James Lee Hebberd was making some claim to this property described, the extent of which was unknown to plaintiff, and there then followed the following prayer:

"Wherefore be it prayed that the court determine the character of the property and the respective rights and equities of all the parties; that said will be interpreted and plaintiff's rights in the property be determined; that provision be made for payment of all debts due and owing by decedent's estate; that partition be decreed according to the rights and equities as found by the court subject to the life estate and homestead rights of W. A. White; or, in the event the court finds the property cannot be equitably partitioned, that it be ordered sold subject to the life estate and homestead rights of W. A. White, and that after the payment of all debts due and owing by the estate, the remainder be partitioned among the parties as the court shall find their respective rights and equities to be; and that plaintiff be granted such other and further relief, either

in law or in equity, to which he may be entitled, and costs laid as to the court may seem just and right."

The following from the judgment of the trial court indicated the views that court had on the questions presented on this appeal: "On this 29th day of January, A. D. 1935, came on to be heard the general exception of the defendants Lauramaude Fink McQuatters and her husband, Frank W. McQuatters, to the first amended original petition of the plaintiff, W. A. White; and the court, having heard and considered said exception, is of the opinion that, under the will of Mary Lee White, as set up in said petition, said plaintiff is not entitled to partition said property during his life, and same is not subject to partition during his life, and, further, that plaintiff is not entitled to assert the liens claimed in said petition, for the reason that said petition shows said property to have been the separate property of Mary Lee White and that same was a homestead at the time of her death; and, therefore, the court is of the opinion that the general exception of said defendants should be in all things sustained."

Appellant's position is that his petition was sufficient to state four different causes of action, viz.: For partition; to establish a lien on the property; to establish his interest in the property; and for construction of the will of his deceased wife. Appellees, in response to the contentions of appellant, contend that the property in question, being the separate property of Mrs. White, was not liable for any claims on appellant's part for moneys expended out of his separate estate; that it being her separate property was not liable for community debts; that the property being the homestead was not liable for the debts or subject to the lien sought to be fixed against it; that appellant, having elected to take under the will, will be held to have abandoned all claims which might otherwise exist in his favor; and that the court, as far as partition of the property is concerned, is bound by the provisions of the will.

There are other propositions presented by appellant which will be considered in the discussion of the case.

█ █  The status of property as separate or community is fixed by the facts of acquisition at time thereof. Janes v. Gulf Production Company (Tex.Civ.App.) 15 S. W.(2d) 1102; Allen v. Allen, 101 Tex. 362, 107 S.W. 528; Creamer v. Briscoe, 101 Tex. 490, 109 S.W. 911, 17 L.R.A. (N.S.)

154, 130 Am.St.Rep. 869; Welder v. Lambert, 91 Tex. 510, 44 S.W. 281; Stiles v. Hawkins (Tex.Com.App.) 207 S.W. 89. And the fact that part of the consideration is paid out of the community estate or the separate estate of the other spouse, or that improvements are placed thereon by such estates, does not alter that status. Such payments, while they may constitute an equity or a charge for which the party contributing may be entitled to reimbursement in an action of equitable partition, create no title or interest in the land as such. Dakan v. Dakan (Tex.Sup.) 83 S.W.(2d) 620, and cases cited.

The property here involved, having been conveyed to Mrs. White before her marriage to appellant, became her separate property and, in the absence of an instrument in writing divesting all or a portion of her title, it so remained until her death. Allen v. Allen, supra. Such being the character of the property, appellant had no interest therein, aside from his homestead rights, until the death of Mrs. White. If Mrs. White had died intestate, he would have had a life estate in one-third of the property with remainder to her son in addition to his homestead rights. Article 2571, R.S. 1925. Under her will the provisions of which appellant made a part of his petition, he became the owner of a one-half interest in the property in question together with a life estate in the whole, the owner of Mrs. White's interest in the property described in appellant's petition as community property, and the sole owner of that alleged to be her separate property.

The principle of election is that he who accepts a benefit under a will must adopt the whole contents of the instrument so far as it concerns him, conforming to its provisions and renouncing every right inconsistent with it. Philleo v. Holliday et al., 24 Tex. 38; Smith v. Butler, 85 Tex. 126, 19 S.W. 1083.

It has also been defined in 69 C.J. § 2330, pp. 1089, 1090, as being "the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he shall not enjoy both, the principle being that one shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if legal and well founded, which would defeat or in any way prevent the full effect and operation of every part of the will." See

Dakan v. Dakan (Tex.Sup.) 83 S.W.(2d) 620, for a full discussion of the principle.

Do the facts here show an election by appellant which would act as a bar to his asserting a claim against the interest conveyed to Mrs. White's son under the will and which would bar an action by him to partition the property? The will conferred upon appellant interests in Mrs. White's property in excess of what he would have received under our statutes of descent and distribution. Articles 2571 and 2578, Rev. St. 1925. Therefore, if he can be said to have accepted those benefits, he should now be precluded from asserting any claim inconsistent with the provisions thereof.

Ordinarily the question of whether or not an election has been made is one of fact and must be left to the decision of a jury. Mayo v. Tudor's Heirs, 74 Tex. 471, 12 S.W. 117. But, as in all other cases, if reasonable minds could not differ as to the effect of the acts and declarations of the electing party, then election may be held to exist as a matter of law.

The allegations of appellant's petition show that he applied for and received letters testamentary as one of the independent executors named in the will of Mrs. White; that he, as was provided in the will, acted as such executor without giving bond; that the will was admitted to probate; that he, acting with the other executor, secured the extension of a loan on the property for three years; that he continued to act as executor under the will until April 10, 1934, a period of almost two years; and that in connection with his assertion of a homestead right in the property he expressly refused to waive the life estate in the property devised to him by the will. In his answer to the cross-action of appellees, he sought to have a legal determination as to his rights in the property, as fixed in the will. These facts and allegations, we think, show as a matter of law an election by appellant to take under the will.

The will, after devising a one-half interest in the property, contains the following provision: "But not to be divided or disturbed during the life time of my husband, W. A. White, also he to manage the property and continue things as he desires, to have all income." This provision precludes, in our opinion, a partition of the property during the lifetime of appellant and is binding on those taking under the will.

The authorities cited holding that a surviving spouse may sell his interest in the community homestead, and that after such sale a partition may be had as between the purchaser and the owners of the interest of the deceased spouse, have no application to the facts here. Appellant alleges the estimated value of the land in question to be $28,000 and is seeking to establish a claim amounting to $23,645.97 against the one-half of, the property he doesn't own. Mrs. White clearly intended that her son should have a one-half interest in the property, and, the will making no mention of any charge against such interest covering advancements or improvements made by appellant or others, it can be presumed that she intended him to take it free from any such charges and that her devise of the remainder of the property together with her interest in other properties was intended to compensate appellant for the advancements and improvements for which he now seeks to recover.

To permit such recovery would not only prevent the carrying out of the provisions of the will, but would, in effect, nullify the devise of the interest made by Mrs. White to her son.

It is well settled that a suit for the construction of a will will not be entertained where there exists no necessity for a judicial construction thereof, 69 C.J. § 1987, p. 866; and a bill for the construction of a will must allege all facts and circumstances necessary to entitle plaintiff to relief, 69 C.J. § 2026, p. 886.

Appellant having resigned as executor of the will is not entitled to a construction thereof to assist him in the discharge of his ,duties, and his petition contains no allegation of a dispute as to the meaning of the will or any portion of it. It follows, therefore, that if he has not shown himself entitled to any relief to which an interpretation of the will might be incidental, he would not be entitled to such construction.

The allegations in appellant's petition show the property in question to be the separate property of his deceased wife and that he became the owner of a one-half interest therein by devise from her with a life estate in the whole. He does not allege that such rights are being questioned by any one; consequently, no necessity for judicial action to establish his rights is shown.

Appellant's petition further showing the property to be a homestead, no lien can lawfully be fixed against the interest therein held by others to secure advancements made by him. Dakan v. Dakan, supra.

After a careful study of the record, the authorities cited, and others found in our investigation, we have concluded that the petition showing an election by appellant to take under the will and failing to allege any facts which would authorize the court to construe the will, the trial court properly sustained the general demurrer.

The judgment is affirmed.