## REED v. BENJAMIN STATE BANK et al.

### No. 1742.

Court of Civil Appeals of Texas. Eastland.

Jan. 21, 1938.

Rehearing Denied March 11, 1938.

J. W. Chancellor and Donald, Kearby & Donald, all of Bowie, for appellant.

Ocie Speer, of Austin, and L. M. Williams, of Benjamin, for appellees.

GRISSOM, Justice.

On March 27, 1936, the appellant, Mrs. Mattie Reed, filed suit against the Benjamin State Bank, as successor to the First National Bank of Benjamin, and on May 6, 1936, by amended petition, Z. Gossett, Commissioner of Banking of the state of Texas, was made a party defendant. The cause of action alleged was: (1) Trespass to try title to 440 acres of land in Knox county, Tex.; (2) in the alternative plaintiff adopted the allegations of the first count, and in addition alleged: (a) That the consideration for said land was paid by Mrs. Reed out of her separate funds, which funds were acquired by the sale of property inherited by her, and that said land belonged to her separate estate; (b) that by mistake of the scrivener the name of her husband was inserted in the deed as one of the grantees; (c) that on December 26, 1922, the First National Bank of Benjamin procured the execution of a deed of trust on said land to secure a note for $6,582.50; (d) that on March 22, 1926, said bank executed and delivered a release wherein it was declared that said note and the lien of said deed of trust were fully paid and released; (e) that on March 1, 1929, said bank filed a purported deed of trust dated February 20, 1929, purporting to secure a note in the principal sum of $4,846.67 (said deed of trust recited that said note was for the unpaid balance of the note for $6,582.50). Plaintiff attacked the validity of the deed of trust dated February 20, 1929, and the trustee's deed thereunder, because (f) the note dated January 15, 1923, for $6,582.50 had been fully paid and the debt evidenced thereby, and the deed of trust lien securing the same had been released and there was no consideration for the note and deed of trust of date February 20, 1929. Plaintiff alleged that on February 20, 1929, she was of unsound mind; (g) because there was no legal acknowledgment by the plaintiff of said deed of trust; (h) because said note and deed of trust dated February 20, 1929, for $4,846.67, were executed, if at all, for the accommodation of the bank for the purpose of assisting it in passing an expected examination. It was alleged that it was understood that after such examination said instruments would be returned canceled. That no right, title, or interest was procured by the bank under a purported sale by the trustee under said deed of trust dated February 20, 1929;

(i) it was alleged (and is admitted) that the Benjamin State Bank was the successor of the First National Bank of Benjamin, and took over the affairs of said National Bank merely by changing its name; that said state bank being in a failing condition was placed in the hands of said banking commissioner for the purpose of liquidation. (There is no question of innocent purchaser involved.)

The defendants, among other things, answered by general denial, plea of not guilty, and plea of limitation under article 5529. Defendants further pleaded by way of estoppel that said land was conveyed to Mattie Reed and her husband jointly; it being alleged that thereby, as a matter of law, the title thereto was in the community; and, further, that the defendants had no notice of plaintiff's claim that such land was her separate property. Defendants further specially pleaded that plaintiff's husband died leaving a will wherein the plaintiff was appointed independent executrix without bond, and bequeathed and devised all his property to plaintiff. The plaintiff filed an inventory and appraisement showing said land to be community property, and that by reason thereof she is now estopped to assert the contrary.

The case was submitted to the jury upon special issues, which issues and jury's answers thereto are substantially as follows:

"No. 1. Do you find from a preponderance of the evidence that the lands in controversy were on February 20, 1929, the separate property of the plaintiff, Mrs. Reed? Answer: Yes.

"No. 2. Do you find from a preponderance of the evidence that the plaintiff, Mrs. Mattie Reed, has traced funds derived from the proceeds of the sale of lands owned by her as her separate property into the payment of the cash purchase price of the lands in controversy, to the full extent of the cash purchase price thereof? Answer: Yes.

"No. 3. Do you find from a preponderance of the evidence that the purpose or intention of the parties, Mrs. Mattie Reed, plaintiff, and her husband, W. H. Reed, at the time of acquiring the property in controversy, was to make and constitute the same the community property of their marriage? Answer: Yes.

"No. 4. Do you find from a preponderance of the evidence that at the time the deed of trust dated February 20, 1929 was signed by Mrs. Mattie Reed, if you find that it was so signed by her, that the said Mrs. Mattie Reed, was mentally incapable of understanding the transaction involved? You will answer this issue 'She was mentally incapable,' or 'She was not mentally incapable,' accordingly as you find the evidence to be. Answer: She was mentally incapable.

"No. 5. Do you find from a preponderance of the evidence that such mental incapacity, if any, of the said Mrs. Mattie Reed continued until on or about the time she was operated upon in July, 1933? Answer: Yes.

"No. 6. Do you find from a preponderance of the evidence that at the time of the signing of the $4,846.67 note dated February 20, 1929, if you find same was so signed, that W. H. Reed and/or Mrs. Mattie Reed was indebted to the said First National Bank of Benjamin, in said sum? Answer: Yes.

"No. 7. Do you find from a preponderance of the evidence that the note dated February 20, 1929, in the sum of $4,846.67, if executed, was so done at the instance and request of C. H. Burnett, president of the First National Bank of Benjamin, in order that said note might be used for the accommodation of said bank? Answer: No.

"No. 8. Do you find from a preponderance of the evidence that W. H. Reed paid unto the First National Bank of Benjamin, Texas, the note as mentioned in the release of the First National Bank of Benjamin dated March 22, 1926? Answer: No.

"No. 9. Do you find from a preponderance of the evidence that W. C. Glenn failed to take the acknowledgment of Mrs. Mattie Reed at a time when W. H. Reed was absent from the room in which it is purported the acknowledgment was taken? Answer: Yes.

"No. 10. Do you find from a preponderance of the evidence that W. C. Glenn failed to explain to Mrs. Mattie Reed the nature and contents of the instrument that it is purported her acknowledgment was taken to, to-wit: The deed of trust dated February 20, 1929. Answer: W. C. Glenn failed to explain fully.

"No. 11. Do you find from a preponderance of the evidence that W. C. Glenn failed to ask Mrs. Mattie Reed that such instrument was her act and deed? Answer: He did not.

"No. 12. Do you find from a preponderance of the evidence that plaintiff, Mrs. Mattie Reed, at the time of said claimed acknowledgment did not declare to said W. C. Glenn that she had willingly signed the same for the purposes and consideration therein expressed? You will answer said issue 'She did not so declare,' or 'She did so declare' accordingly as you may find the facts to be. Answer: She did not so declare.

"No. 13. Do you find from a preponderance of the evidence that at the time of said claimed acknowledgment the plaintiff Mrs. Mattie Reed did not state to said W. C. Glenn, that she did not wish to retract it? You will answer said issue 'She did not so state' or 'She did so state,' accordingly as you find the evidence to be. Answer: She did not so state.

"No. 14. Do you find from a preponderance of the evidence that Mrs. Mattie Reed did not appear before W. C. Glenn for the purpose of having her acknowledgment taken? Answer said issue 'She did not appear for such purpose' or 'She did appear for such purpose' accordingly as you may find the evidence to be. Answer: She did appear.

"No. 15. Do you find from a preponderance of the evidence that at the time the First National Bank of Benjamin loaned to W. H. Reed and wife, Mattie Reed, the sum of $10,000, and took as security therefor the deed of trust shown in evidence upon and including the land in controversy the said bank through any of its officers, or agents had notice of any claim upon the part of the plaintiff, Mrs. Mattie Reed, that said lands were her separate property? Answer: No.

"No. 16. Do you find from a preponderance of the evidence that plaintiff's cause of action herein to cancel or annul the deed of trust, dated February 20, 1929, signed by W. H. Reed and Mattie Reed, and the Trustee's Deed to Benjamin State Bank thereunder of the property in controversy accrued more than four years prior to the 27th day of March, 1936, when the original petition in this suit was filed by plaintiff. Answer: Yes.

"No. 17. Do you find from a preponderance of the evidence that plaintiff's, Mrs. Mattie Reed's husband died more than four years prior to March 27, 1936? Answer: Yes.

"No. 18. Do you find from a preponderance of the evidence that the Benjamin State Bank and the defendant Banking Commissioner of Texas, in charge of said bank for liquidation, have been in peaceable and adverse possession of the land in controversy under title, or color of title, for more than three years prior to the 27th day of March, 1936? Answer: Yes.

"No. 19. Do you find from a preponderance of the evidence that plaintiff, Mrs. Mattie Reed, by electing to take property under the will of her husband, W. H. Reed, deceased, received property to which she would not otherwise have been entitled to? Answer: Yes.

"No. 15–A. Do you find from a preponderance of the evidence that at the time the deed of trust of February 20, 1929 was executed (if same was executed) and the note for $4,846.67 was executed (if you find the same was so executed) that the said bank through any of its officers or agents had notice of any claim upon the part of the plaintiff, Mrs. Mattie Reed, that said lands therein described were her separate property? Answer: Yes."

Upon the verdict the court rendered judgment for the defendants.

Appellant, plaintiff in the trial court, contends that the answer to issue 1, to wit, that said land was, on February 20, 1929 (the date of the execution of the deed of trust under which the land was sold by the trustee and at which sale the bank purchased the land), her separate property, and the answer to issue 2, that she had traced funds derived from the proceeds of the sale of lands inherited by her into the payment of the cash purchase price of the land to the full extent thereof, and the answer to issue 4, that at the time of the execution of the note and deed of trust under which the property was sold to the bank she was of unsound mind, and the answer to issue 5, that such mental incapacity continued until July 1933, and the answers to issues 9, 10, 12, and 13, which she contends showed that her acknowledgment of the deed of trust under which the land was sold to the bank was not legally taken, entitled her to a judg-

ment for the title and possession of the land in question.

Appellees' counter proposition thereto is in substance that the answer to issue 3, that it was the purpose or intention of plaintiff and her husband at the time the land was acquired to make and constitute the same their community property, and the answer to issue 1–A, that the insertion of her husband's name in the deed as one of the grantees was not a mistake of the scrivener, compel a judgment for the defendants.

The jury having found that the cash purchase price of the land was paid out of the separate funds of the wife and that the plaintiff and her husband intended the property should be community property, the question is presented whether the payment of the cash purchase price of the land out of the wife's separate estate made that portion of the land represented by the cash payment her separate property, or whether an intention that it be community had the effect of fixing the status thereof as community. If the mere intention of the parties could have the effect of making the portion of the property paid for out of the wife's separate estate community, the question is then presented whether or not the evidence supports the finding of such intention.

In Gleich v. Bongio et al., Tex.Com. App., 99 S.W.2d 881, 883, opinion by Judge Hickman, it is said:

"The question thus presented is: *What is the status of property, with reference to its being separate or community, when purchased during marriage partly with separate funds of the husband and partly on the credit of the community?* * * *

"It seems to be the rule in some jurisdictions that property purchased partly with community .funds and partly with separate funds of one of the spouses falls into the community, but *in Texas it has long been established that such an acquisition has the effect of creating a kind of tenancy in common between the separate and community estate, each owning an interest in the proportion that it supplies the consideration.* The rule is well stated in 31 C.J. p. 40, §. 1132, in this language:

" 'Generally purchases made partly with separate and partly with community funds will be community property to the extent and in the proportion that the consideration is furnished by the community, *the*

spouse supplying the separate funds having a separate interest therein to the amount of his or her investment, the tenure of the whole property in such cases being by way of a sort of tenancy in common between the separate and community estates.'

"A long list of Texas cases are cited in support of the text and it is unquestionably a correct general statement of the established rule in this jurisdiction."

"The case seems to have been tried on the theory that the rule above announced does not preclude or contradict a holding that the intention of the husband and wife at the time the property is acquired determines its status with reference to its separate or community character. The trial judge found as a fact that there was no agreement between the husband and wife that the property was intended to be or to become the separate property of the husband, and upon the basis of that fact finding concluded that it was, in part, community. *Does the intention of the husband and wife at the time property is purchased upon a community obligation determine whether it is to become community property or the separate property of one of the spouses?* It would appear that probably there is not complete harmony in the decisions on that question. Recent opinions of this court, however, have pointed out the true nature of agreements having that effect.

"In Brokaw v. Collett, Tex.Com.App., 1 S.W.2d 1090, 1091, it was held:

" 'It does not lie in the power of the husband and wife by contract between themselves, made in advance, to set aside the Constitution of this state, as applied to the wife's separate property rights.'

"In Foster v. Christensen, Tex.Com.App., 67 S.W.2d 246, 249, Judge Smedley clearly expressed the true rule in this language:

" 'The land, of course, presumptively became the community property of Mr. and Mrs. Newgent when it was conveyed to them jointly with no recital of her separate ownership; but her ownership of the land as her separate property would have been established by proof of the allegations in the answer that the cash payment was made out of her separate funds and that it was agreed at the time *by the parties to the deed* that the land should be her separate property and that the balance of the purchase money should be paid out of her separate funds.' (Italics ours.)

"In the case of Solether v. Trinity Fire Ins. Co., 124 Tex. 363, 78 S.W.2d 180, Judge (now Justice) Critz quoted with approval from Judge Smedley's opinion and reannounced the holding made therein. *The mere intention of the husband and wife cannot convert property purchased with an obligation binding upon the community into the separate estate of either spouse.* To accomplish that purpose the vendor must have agreed with the vendee to look only to his or her separate estate for the satisfaction of the deferred payments." (Italics ours.)

Our construction of said opinion and the authorities therein cited compels a holding that the portion of the land represented by the cash purchase price paid out of the wife's separate estate is the wife's separate property, and that portion represented by the debt assumed is community property. It is immaterial here whether the portion of the land represented by the assumption belongs to the community or the separate estate of the husband. In either event, such portion is subject to the lien of the bank. But that portion of the property represented by the cash consideration paid for with the separate funds of the wife is not subject to the debt of the bank.

With reference to the finding that it was the intention of Mrs. Reed and her husband at the time the land was acquired to make it community property, if such intention alone could have such effect, we think the evidence does not support such finding. There was no evidence of any agreement between Mrs. Reed and her husband that said land should become community property. There was no evidence that Mrs. Reed gave to her husband any of the money acquired by her through the sale of land inherited by her. There is no evidence that Mrs. Reed knew the husband was named as a grantee in the deed. Appellees contend that the fact that both husband and wife were named as grantees in the deed constitutes evidence of an intention that it should be community property. The presumption is that property acquired during marriage is community property, but such presumption "can be rebutted by satisfactory proof, except as to bona fide purchasers and contract lien creditors without notice. Speer's Law of Marital Rights, supra. *Such presump-*

*tion is rebutted as to the wife when it is established that the property was paid for out of her separate estate.* Foster v. Christensen, Tex.Com.App., 67 S.W.2d 246, 249." Solether v. Trinity Fire Ins. Co., 124 Tex. 363, 78 S.W.2d 180, 182. (Italics ours.)

In determining the status of property as separate or community, the intention of the parties may sometimes be important. However, if the facts of the case under the law fix the status of the property as either separate or community, the express agreement of the husband and wife that the property shall be otherwise does not affect its status. If under such situation the legal status of property cannot be affected by express agreement of the husband and wife, it certainly cannot be affected by their intention not reaching the stage or dignity of an agreement. Kellett v. Trice, 95 Tex. 160, 66 S.W. 51; Green v. Ferguson, 62 Tex. 525; Cox v. Miller, 54 Tex. 16, 26; White v. Hebberd, Tex.Civ.App., 89 S.W.2d 482; 23 Tex.Jur. pp. 104-105; Turbeville v. Commissioner of Internal Revenue, 5 Cir., 84 F.2d 307.

It having been decided in Foster v. Christensen, supra, that the presumption of community based on the acquisition of property during marriage is rebutted by proof that it was paid for with the wife's separate funds, and it having been determined that such proof rebuts the presumption of community when the legal title to the property stands in the name of the husband alone, we see no reason why such presumption is not likewise rebutted, and the status of the property as the wife's separate estate established, by the same proof, when the legal title stands in the name of both the husband and wife. Certainly, the fact that the wife is named as one of the grantees in the deed does not place a greater burden upon her in proving her separate ownership than she would have were her name omitted as a grantee in the deed. In Foster v. Christensen, supra, the conveyance was to the husband and wife jointly.

W. H. Reed died May 28, 1930. About November 3, 1931, the land was sold under the deed of trust dated February 20, 1929, at trustee's sale, to said bank. The will of W. H. Reed, in which he devised and bequeathed all the property that he might own at the time of his death to his wife, the plaintiff herein, did not attempt to devise or bequeath any specific property. It purported to devise only such property as the testator owned at the time of his death. We think plaintiff is not estopped to deny that the land in question is community property. Avery v. Johnson, 108 Tex. 294, 192 S.W. 542, 544; Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620, 624. The only transaction with reference to said will and its probate and her qualification as independent executrix thereunder that, we think, could have any possible effect on the question is the fact that the appraisers of said estate in the inventory and appraisement thereof listed said land as community property. The transactions with the bank were prior to this time. It did not rely on such act. Moreover, the jury has found that at the time she is supposed to have so elected Mrs. Reed was of unsound mind. Even if such action would otherwise operate as an estoppel and prevent her assertion that the property was not community, which we think it would not, her insanity at such time would preclude estoppel thereby.

The same thing is true with reference to the finding of the jury that plaintiff's cause of action accrued more than four years prior to the institution of her suit. Limitation did not run against her while insane. 28 Tex.Jur. 236; Zachry v. Moody, Tex.Civ.App., 59 S.W.2d 846.

The jury found in answer to issue 16 that plaintiff's cause of action to cancel the deed of trust "accrued more than four years prior" to the filing of her original petition. No instructions as to what facts would constitute an accrual of her cause of action were given. The facts with reference thereto were not submitted. We think it is a question of law, or at least a mixed question of law and fact, as to when a cause of action has accrued. If effect should be given to the answer to this issue it appears to be in conflict with the jury's finding that plaintiff was of unsound mind on February 20, 1929, and thereafter until July, 1933.

Appellees concede that a plaintiff may anticipate the defense of limitation and plead facts in avoidance thereof in an original or amended petition, but assert that she has not done so. Plaintiff pleaded in her amended original petition that on February 20, 1929, and thereafter until July, 1933, she was of unsound mind. She pleaded facts showing the acknowledgment of the deed of trust in question was

not legally taken, etc. She further alleged "no limitation has run against her right to recover the land in controversy, and that no limitation has run against her right to have said purported deed of trust canceled and annulled *for the reasons herein stated,* and for the removal of the same as a cloud on her title." We think this constituted a sufficient allegation of facts tolling the statute of limitations. (Italics ours.)

October 25, 1921, W. H. Reed executed a note for $10,000 payable to the First National Bank of Benjamin, due April 25, 1922. This was secured by a deed of trust lien on 640 acres of land, including the 440 acres in controversy. Mrs. Reed joined in the execution of the deed of trust.

December 20, 1922, said bank released said debt and lien.

December 26, 1922, Reed and wife executed a note payable to said bank for $6,582.50, due July 15, 1923. They executed a deed of trust on said 640 acres to secure the payment of said note. This deed of trust recited that it was "in lieu, extension and substitution" of the deed of trust given to secure payment of the $10,000 note "and the beneficiary herein is subrogated to all the rights, liens and equities contained in said former deed of trust."

March 22, 1926, said bank executed and delivered a release of said deed of trust lien. The indebtedness here (as in the release of the $10,000 debt and lien) was by the release declared to be "fully paid off and discharged" and the land released from the lien of this and the former deed of trust lien.

February 20, 1929, the Reeds executed to said bank their note for $4,846.67, due August 20, 1929, and a deed of trust on said 640 acres to secure its payment. The deed of trust recited that said note was in renewal and extension of the balance due on the $6,582.50 note. It contained a recital that it was "in lieu, extension and substitution" of the deed of trust executed to secure the payment of the $6,582.50 note, and that the bank "is expressly subrogated to all the rights, liens and equities contained in said former deed of trust."

December 1, 1922, the Reeds executed and recorded a homestead designation in which 200 acres of the 640 acres described in each of said three deeds of trust was designated as their homestead.

Appellees say that if it should be held that the land was the wife's separate property to the extent of the portion represented by her cash payment, that nevertheless her title was equitable only, since the legal title was in the community, and the community furnishing part of the consideration, the assumption of the debt to the state, and the jury having found the bank had no notice of the wife's claim of separate ownership at the time the original loan was made, the equitable right of the wife would not prevail against the bank's superior right, and, therefore, the judgment for such reason should be affirmed.

■ We cannot agree with the contention. The status of the property was presumptively community because acquired during marriage. The legal title was, we think, in Mrs. Reed and her husband, not in the community. The jury did find that at the time the $10,000 loan was made in 1921 the bank did not know of the wife's claim. It found the bank did know of her claim when the deed of trust of date February 20, 1929, under which the property was sold, was executed. The bank acquired no rights as against the wife by said last deed of trust by reason of her insanity and the bank's then knowledge of her claim. Did the previous liens recited in the two former deeds of trust continue so that a sale of her interest was authorized? The recited continuation of said liens in the last deed of trust amounted to nothing; the wife being insane when it was executed and the bank then knowing of her separate ownership. Article 5520, as amended by Acts 1931, 42d Leg. p. 230, c. 136, § 2, Vernon's Ann. Civ.St. art. 5520, was effective on the date of the trustee's sale. By its provisions the power of sale contained in the first two deeds of trust could not be enforced at the time of the sale because the sale was more than four years after the maturity of the indebtedness secured thereby and the statute providing "such sale under such powers after the expiration of such times, shall be void." It further provides that, as applicable to the liens of the first two deeds of trust, such liens shall cease to exist four years after the maturity of the debts secured thereby.

The $10,000 note was due April 25, 1922. The $6,582.50 note was due July 15, 1923. The sale was in 1931. The liens securing same, as to the wife, were not effectually carried into the deed of trust

of February 20, 1929. The jury found that the wife was then insane and the bank knew of her claim of separate ownership.

■ For the reasons given, the judgment is reversed. The case has not been fully developed. We think the ends of justice will be better subserved by a remand than rendition of the judgment, if it could be rendered under the present state of the record. Associated Oil Co. v. Hart, Tex.Com.App., 277 S.W. 1043; Camden Fire Ins. Co. v. Yarbrough, Tex. Com.App., 215 S.W. 842; Williams v. Safety Cas. Co., Tex.Sup., 102 S.W.2d 178.

The judgment is reversed and the cause remanded.

On Rehearing.

In considering the motions for rehearing we have considered the possible effect on the instant case of the decision in Jasper State Bank v. Braswell, Tex.Com.App., 111 S.W.2d. 1079. We have concluded, under the present state of the record, that decision does not authorize a different disposition of the appeal than that made under the original opinion.

•Appellant's and appellees' motions for rehearing are overruled.